### PEOPLE ex rel. LAWRENCE v. TAX COMMISSIONERS.

*(Supreme Court, Special Term, New York County.* December, 1891.)

1. TAXATION—ASSESSMENT—RESIDENCE IN TWO PLACES.

In a proceeding to review an assessment it appeared that petitioner's place of business was in New York city, and that he owned a house on Long island, where he had resided continuously, from 1888 until December, 1890, with the exception of short visits to New York city during the winter months. He had voted for seven years at his residence on Long island, and was assessed there in 1890. In December, 1890, he came with his wife to New York city to visit his mother, intending to stay about six weeks, but he was detained by sickness until March, 1891. He did not pay board or otherwise contribute to the expenses of his mother's household. *Held* that, in 1891, petitioner had two residences, within Act March 25, 1850, which provides that, if any person resides in two or more towns or counties during any year in which taxes may be levied, his residence for such purpose is deemed to be in the town or county where his principal business is transacted.

2. SAME—ESTIMATE BY COMMISSIONERS—REDUCTION.

Where it appears, in such case, that petitioner, relying on his claim that he was not subject to taxation in New York city, presented to the tax commissioner no evidence as to the amount of his taxable property, and the commissioners assessed it at a certain amount, such assessment will be reduced on a showing that petitioner's taxable property was less than the amount so assessed.

At chambers. *Certiorari* by Newbold T. Lawrence to review an assessment of the property of petitioner for taxation made by the tax commissioners of New York city.

*Lord, Day & Lord,* for relator. *William H. Clark,* Corp. Counsel, for respondents.

ANDREWS, J. The relator's place of business on the second Monday of January, 1891, was, and for many years prior to that date had been, in the city of New York. For some years prior to 1887 he resided at Lawrence, in the town of Hempstead, Long island, during the summer months, and in the city of New York during the winter months, and, as his place of business was in that city, he was, during those years, undoubtedly taxable there. In June, 1887, he purchased the interest of his sisters in a house at Lawrence, which had come to him and them under the will of their deceased father, and commenced to alter it for his own use. He married in December, 1887, and moved into said house in September, 1888, and has continuously lived there ever since except for short periods of time during the winter months, when he and his wife have been at his mother's house in New York. He did not pay for the board of himself and his wife, or contribute to the expenses of his mother's household while they were members of it. He has voted for seven years last past in the town of Hempstead, and was assessed there for the purpose of taxation in the year 1890. In the winters of 1889 and 1890 the relator and his wife were at his mother's house for the periods of six and four weeks, respectively. In December, 1890, shortly before Christmas, the relator and his wife came to his mother's house in New York city, expecting to stay there about six weeks, but they were detained there by his sickness until the 1st of March, when they returned to Lawrence.

Under our statutes every person is to be assessed, for the purpose of tax-ation, in the town or ward where he resides when the assessment is made for all personal estate owned by him; and under the act of March 25, 1850, if any person resides in two or more towns or counties during any year in which taxes may be levied, his residence, for such purpose, is deemed to be in the town or county where his principal business is transacted. Upon the undis-puted facts of this case there can be no doubt that, since 1887, the relator's domicile or home has been at Lawrence; but the question whether he can be deemed to have resided in New York on the second Monday of January, 1891, seems to me to be a close and difficult one. The books are full of cases as to what constitutes residence, with reference to eligibility to office, the right to vote, liability to taxation, liability of person to arrest and property to attachment, and jurisdiction in actions for divorce. It has frequently been held that facts which constitute a person a resident of a particular locality for one purpose do not make him a resident for some other purposes. Many of the decisions turn upon the construction of local statutes, and where the facts are substantially the same there is great conflict of opinion as to what constitutes residence. Many courts and judges have attempted to define "residence," but the difficulty about such definitions is that they generally require further definitions to make their meaning clear and certain. The consequence is that it is almost impossible, to deduce from the cases a rule of law by which it can be determined in any particular case whether, upon the facts proved, a person is or is not a resident. A leading case in this state, and one which has been frequently cited, is *Frost* v. *Brisbin,* 19 Wend. 11. In that case it was said: "There must be a settled, fixed abode, an intention to remain permanently, at least for a time, for business or other purposes, to constitute a residence within the legal meaning of the term." That defini-tion was cited and followed in *Bartlett* v. *City of New York,* 5 Sandf. 44. In that case it appeared that the plaintiff's domicile or home was in Westchester county, but because he took and occupied apartments for the winter in an hotel in the city of New York (though with the intent to continue to be a resi-dent of Westchester county) it was held that he was properly assessed in New York city. This case was followed in *Douglas* v. *Mayor, etc.,* 2 Duer, 110, where the facts were similiar, to the extent that the plaintiff lived in New York city in the winter and spring and in the country in the summer and au-tumn. And both the above cases were cited and followed in *People* v. *Com-missioners,* (Sup.) 3 N. Y. Supp. 674, upon a similar state of facts. The definition of "residence" given in *Frost* v. *Brisbin* was found to be sufficient for the solution of the questions presented in the above cited cases, but when it is sought to apply it to the case at bar the conclusion which should be drawn is not so obvious. Under these decisions it does not follow that be-cause the relator owned a house in Lawrence, which he occupied for most of the years, had voted for seven years in the town of Hempstead, and was as-sessed and paid taxes in Lawrence in the year 1890, he was not taxable in New York city. But what effect should be given to the fact that the relator and his wife came to New York just before Christmas, intending to stay only six weeks, and that their actual stay, including the time during which they could not leave on account of the relator's sickness, was only a little over two months, and the fact that they had no house, apartments, or establish-ment of their own, and were merely the guests of the relator's mother at her house? In all the cases above cited the persons taxed were living in the city of New York on the second Monday of January, but no attempt was made by the court, in either case, to determine just how long before or after that date a person, who is there on that day, must remain in order to be liable to taxation there. It is difficult, perhaps impossible, to lay down any exact rule on this point, but if the relator had owned or hired a house or apartments, and had maintained an establishment of his own, I do not see how the case

at bar could be distinguished from the cases above cited merely because he and his wife came with the intention of staying but six weeks, and did actually stay but a little more than two months. They would have had a "fixed, settled abode" for over two months, and what distinction can be drawn between a "fixed, settled abode" for two months and one for three, four, or five months? They would also have had an "intention to remain permanently, at least for a time," and what distinction can be drawn between an intention to remain "permanently" for at least six weeks, and an intention to remain "permanently" for double that time? In the next place, if the relator and his wife had lived for six months, or all the year around, as guests of the mother, in the latter's house in the city of New York, or at the mother's expense, by themselves, in a separate house or apartments, the relator would certainly have been a resident and liable to taxation there; and I do not see how any distinction can be drawn between living in New York city at the expense of the mother for two months and living in that manner for six or twelve months, so far as liability to taxation is concerned.

Upon the whole case, I have reached the conclusion, though not without considerable doubt and hesitation, that the relator had two residences; that he was residing in the city of New York on the second Monday of January, and that, as his place of business was in that city, he was lawfully assessed there.

With regard to the amount of the assessment, it appears that the relator, relying upon his claim for total exemption from taxation, did not present evidence to the tax commissioners as to the amount of his taxable property. Under the circumstances, however, the court has the power and ought to reduce the assessment, because the evidence shows that the relator's taxable property was very much less than $100,000, the amount of the assessment. In his sworn petition the relator stated that upon his application to the tax commissioners "he was ready to prove that the value of his personal estate, not exempt from taxation, over and above his debts, did not exceed $10,000." And when he was first examined in this proceeding he testified that his personal property "did not exceed $10,000 over and above his just debts." In view of this evidence, I think that the assessment should be reduced, and should be fixed at $10,000, rather than a lower sum, notwithstanding some testimony which the relator gave about his property on a subsequent examination. No costs should be allowed to either party.