## In re DEANS.

### (District Court, W. D. Arkansas, E. D.   December 1, 1913.)

1. DOMICILE (§ 4*)—"RESIDENCE."

> The word "residence" is an elastic term of which no exact definition applicable to all cases can be given at law.  It must be construed in accordance with the object and intent of the statute in which it occurs; it being generally held that whether a party's removal constitutes a change of residence depends on his intention in making such removal or the animus manendi.

> [Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5–23; Dec. Dig. § 4.*

> For other definitions, see Words and Phrases, vol. 7, pp. 6151–6161; vol. 8, p. 7788.]

2. ALIENS (§ 62*)—NATURALIZATION—"CONTINUOUS RESIDENCE."

> Act Cong. June 29, 1906, c. 3592, § 4, 34 Stat. 596 (U. S. Comp. St. Supp. 1911, p. 529), provides that, on an application by an alien for citizenship, it shall be made to appear that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the city or territory where the court is at the time held one year at least, etc.  *Held*, that "continuous residence," within such section, did not negative absence from the United States for any cause, and that where petitioner, a native of Scotland, after emigrating resided continuously and permanently in the United States, except that he returned to Scotland in July, 1910, for a two months' visit, and, after he returned, went to the Panama Canal Zone, where he was employed for four months, when he was discharged because he was not a citizen, and thereupon returned to his former home in Arkansas, where he had resided ever since, his residence was continuous so as to entitle him to naturalization.

> [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125; Dec. Dig. § 62.*]

Application by Christopher James Davis Deans for naturalization. Granted.

The court finds the facts as follows:

The applicant is a native of Scotland.  In November, 1906, after he had reached the age of 21 years, he emigrated to the United States.  He is a boiler maker by trade and found employment in Schenectady, N. Y., where he resided for one year.  He then moved to Pittsburgh, Pa., where he worked at his trade for one year, and in November, 1908, moved to Little Rock, Ark., where he worked in the railroad shops, intending to make that city his permanent home.  In July, 1910, he visited his mother in Scotland, being out of the United States for about two months.  He then returned to Little Rock, which he has claimed as his residence ever since he arrived in this state.  In December, 1910, he was employed by the Isthmian Canal Commission at the shops in Grogona within the Panama Canal Zone, having passed a satisfactory examination before his employment.  He remained there four months, when he was discharged for the reason that he was not a citizen of the United States.  He thereupon returned to his former home in Little Rock, Ark., where he has resided ever since.  At the time he accepted employment in Panama he intended to remain there only a few months, not exceeding a year, and then return to Little Rock.

His declaration of intention to become a citizen of the United States was made more than two years prior to the filing of this application.  He is a man of good moral character, intelligent, thoroughly familiar with our system of government, and in every way qualified to make a good citizen of the United States, if the facts above recited are sufficient to establish the fact that he

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

has resided continuously in the United States for more than five years, within the meaning of the naturalization acts.

M. R. Bevington, of St. Louis, Mo., for the United States.

TRIEBER, District Judge (after stating the facts as above). On behalf of the government, objections are made to the granting of the petition owing to the absence of the applicant from the United States as set out in the findings of facts. It is claimed that during the time he was absent he was not a resident of the United States, nor was his residence continuous as required by the provisions of the naturalization act.

[1] The word "residence" is an elastic term, of which no exact definition, which is applicable in all cases, can be given at law, but must be construed in every case in accordance with the object and intent of the statute in which it occurs. Lewis v. Graham, 20 Q. B. D. 780; Rindge v. Green, 52 Vt. 208; People v. Tax Commission (Sup.) 16 N. Y. Supp. 835. But it has been generally held whether a party's removal constitutes a change of residence depends upon his intention in making such removal, or, as stated in The Venus, 8 Cranch, 253, 279 (3 L. Ed. 553), a leading case which has been frequently followed with approval:

"In questions on this subject the chief point to be considered is the animus manendi; and courts are to devise such reasonable rules of evidence as may establish the fact of intention. If it sufficiently appear that the intention of removing was to make a permanent settlement, or for an indefinite time, the right of domicile is acquired by residence of a few days. This is one of the rules of the British courts, and it appears to be perfectly reasonable."

The converse of the rule is equally correct.

[2] As shown by the findings of facts made by the court, the intention of the applicant was not to change his residence which he had established in this country when he left for Great Britain or the Panama Canal Zone; but, on the contrary, his intention was to retain his residence in the United States, the absences being only temporary, the one for pleasure and the other on business. But it is contended that the language used in the naturalization act of 1906, as well as some of the former acts, is that "he has resided continuously within the United States five years at least." Counsel for the government rely upon the definition given by the different lexicographers of the word "continuous," and insist that it means "unbroken," and that therefore the petitioner has not resided continuously within the United States for the five years preceding his application.

In construing statutes the general rule is that the words used will be given their ordinary meaning in common use, but the duty of the courts, when construing a statute, is to carry into effect the intention of the lawmaking department when that can be done without doing violence to the language used. Atkins v. Fiber Disintegrating Co., 18 Wall. 272, 4 L. Ed. 841; Stevens v. Nave-McCord Merc. Co., 150 Fed. 71, 75, 80 C. C. A. 25, 29; United States v. Lewis (D. C.) 192 Fed. 633, 639, and authorities there cited. Another well-established rule is that when a statute is passed on a subject which is covered by existing statutes, and words are taken from the former statute which had there-

tofore been construed a number of times either by the courts or the chief executive officers of the government who are charged with the execution of the statute, the courts will conclusively presume that Congress used the language in the sense in which it had been previously construed. United States v. Mayes, 12 Wall. 177, 20 L. Ed. 381; Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429; United States v. Baruch, 223 U. S. 191, 32 Sup. Ct. 306, 56 L. Ed. 399; Latimer v. United States, 223 U. S. 501, 32 Sup. Ct. 242, 56 L. Ed. 526; Hemmer v. United States (C. C. A.) 204 Fed. 905. Applying these rules of construction to the act, it is advisable to examine the history of the legislation on the subject of naturalization, and also the construction placed upon the former acts. The court has been unable to find any reported decisions on this subject prior to the enactment of the act of 1906; but there are a number of opinions by Secretaries of State, and one opinion of the Attorney General, to which reference will be made hereafter.

The first naturalization act was enacted March 26, 1790 (chapter 3, 1 Stat. 103). This act was repealed by the act of January 29, 1795, c. 20, 1 Stat. 414, which was a new act covering the entire subject. The next act was that of April 24, 1802, c. 28, 2 Stat. 153. In neither of these acts was a "continuous" residence required. The first act in which that word was used was the Act of March 3, 1813, c. 42, 2 Stat. 809. The bill for that act, when introduced, contained nothing in relation to naturalization, but, as is shown by its title, was intended as "An act for the regulation of seamen on board the public and private vessels of the United States." The following section was attached as a rider to that act:

"Sec. 12. That no person who shall arrive in the United States, from and after the time when this act shall take effect, shall be admitted to become a citizen of the United States, who shall not for the continuous term of five years next preceding his admission as aforesaid have resided within the United States, without being at any time during the said five years, out of the territory of the United States."

That provision was evidently considered by Congress to be too drastic, for by the Act of June 26, 1848, c. 72, 9 Stat. 240, the words "without being at any time during the said five years, out of the territory of the United States," were expressly repealed. While the naturalization acts were amended at various times thereafter, no change was made in the provisions of the act requiring five years' residence when the Revised Statutes were enacted, and that is practically the language employed in the Revised Statutes, subdivision 3 of section 2165 (U. S. Comp. St. 1901, p. 1329), and section 2170 (U. S. Comp. St. 1901, p. 1333).

The act of 1906 now in force adds the word "continuously" in what was the third subdivision of section 2165, but leaves section 2170 in force without any change. United States v. Rodiek, 162 Fed. 469, 89 C. C. A. 389; Bessho v. United States, 178 Fed. 245, 101 C. C. A. 605. That section is as follows:

"Sec. 2170. No alien shall be admitted to become a citizen who has not for the continued term of five years next preceding his admission resided within the United States."

In Re an Alien, Fed. Cas. No. 201a, which arose under the act of 1802, it was held that residence meant domicile and that that act then in force did not require a continuous residence. The question as to whether the residence had to be continuous came frequently before the Department of State while the former acts were in force. Mr. Fish submitted that question in 1871 to the Attorney General, and he held that a residence in the United States would not be interrupted within the meaning of a treaty by a transient absence for business, pleasure, or other occasions with the intention of returning. Case of Moses Stern, 13 Ops. Attys. Gen. 376.

Mr. Bayard, Secretary of State, in directions to the Minister of the United States to Switzerland, given May 6, 1885, said:

"While a resident domicile here would not be interrupted by transient absences animo revertendi, yet the establishment, during absence from the United States, of a domicile in Switzerland, even though temporary, would be in conflict with the right to American domicile for the purpose of the naturalization statutes."

In a letter by Mr. Hill, Acting Secretary of State, to the American Minister to Turkey, written June 14, 1901, he said:

"The words 'resided uninterruptedly' are obviously to be understood not as a continual bodily presence but in the legal sense; and, therefore, a transient absence, a journey, or the like, by no means interrupts the period of five years contemplated by the first article. This is the accepted construction of the words 'resided uninterruptedly.' "

And in speaking of section 2170, R. S., he proceeds:

"This is broader than the language of the treaties and is to be understood in the ordinary legal sense, according to which a transient absence for business, pleasure, or other occasions with the intention of returning, does not interrupt the residence."

And this is the construction placed upon the present naturalization act by the courts, so far as the reported cases show. In Re Schneider (C. C.) 164 Fed. 335, it was held that:

"The word 'continuously' is not used literally as requiring the applicant to remain at all times physically within such jurisdiction, but applies to changes of domicile only; and a sailor by going to sea does not abandon his residence."

In United States v. Aakervik (D. C.) 180 Fed. 137, it was held, quoting from the headnote:

"While one's residence under Revised Statutes, § 2170, * * * which requires an applicant for citizenship to have resided in the United States for five years next preceding his admission, depends largely on his intention, such intention is to be gathered from his acts rather than from his declarations."

The learned judge in his opinion in that case, in speaking of section 12 of the Act of March 3, 1813, and its subsequent repeal by the Act of June 26, 1848, said:

"The elimination by the revision (referring to the words 'without being at any time during the said five years out of the territory of the United States') would seem to indicate that it was the purpose of Congress not to require that the petitioner remain continuously within the United States."

In United States v. Cantini (D. C.) 199 Fed. 857, it was held that a certificate of naturalization granted upon evidence showing that the

alien was not continuously within the United States during the five years preceding the naturalization, but with no intention to change his residence, was not issued in violation of the law. The court there said:

"It was clearly not the purpose of Congress to intend that an alien seeking citizenship should not leave the territorial limits of the United States within a period of five years preceding his application. Had that been the intention, Congress would have used some language like that used in the Act of March 3, 1813."

In United States v. St. Louis Southwestern Ry. Co. (D. C.) 189 Fed. 954, 963, the provision in the hours of service act, which prohibits a telegraph operator who transmits, receives, or delivers orders pertaining to or affecting train movements from being on duty for a longer period than 9 hours in any 24-hour period, at stations continuously operated night and day, was before the court. It was there contended that, as the said telegraph office was closed during 4 hours in each 24-hour period, it was not an office kept open continuously day and night within the meaning of the statute; but this contention was overruled by the court, and upon writ of error this ruling was affirmed. 199 Fed. 990, 117 C. C. A. 666.

A statute of Rhode Island made "continued drunkenness" a cause of divorce, and it was held that this did not mean drunkenness without interruption, but gross and confirmed habits of intoxication. Gourlay v. Gourlay, 16 R. I. 705, 19 Atl. 142.

In my opinion the applicant is entitled to naturalization, and it is so ordered.