## UNITED STATES v. DEANS.

(Circuit Court of Appeals, Eighth Circuit. February 16, 1916.)

### No. 4457.

1. ALIENS ⬅68—NATURALIZATION—SUFFICIENCY OF EVIDENCE.

Act June 29, 1906, c. 3592, § 10, 34 Stat. 599 (Comp. St. Supp. 1911, p. 533), provides that, if a petitioner for citizenship has not resided in the state for five years continuously and immediately preceding the filing of the petition, he may establish by two witnesses the time of his residence within the state if for more than one year, and the remaining portion of his five years' residence may be proved by the depositions of two or more citizens. An alien arriving in the country in 1906, who applied for citizenship in July, 1913, testified that he lived in New York from November, 1906, to November, 1907, and in Pennsylvania from that time until November, 1908, when he moved to Arkansas. The subscribing witnesses testified to his residence and good character while in Arkansas, and he filed the depositions of witnesses as to such residence and character while in New York. It appeared that he was out of the country for periods of two and four months during his residence in Arkansas. Held, that there was sufficient evidence to sustain the court's finding as to his residence and moral character during the portion of the five years preceding the filing of the petition prior to his removal to Arkansas and during the periods of his absence from the United States, as residence and character once proved are presumed to continue in the absence of countervailing evidence.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ⬅68.]

2. ALIENS ⬅68—NATURALIZATION—PERSONS ENTITLED TO NATURALIZATION—"CONTINUOUSLY."

Under Act June 29, 1906, authorizing the court to admit applicants to citizenship when it is made to appear to the satisfaction of the court that immediately preceding his application he has resided continuously within the United States for five years, absences from the United States of two and four months during such five years did not in themselves constitute a fatal breach of the continuity of his residence, and it was a question of fact for the court whether, in view of the evidence as to the intention of the applicant and the purpose and effect of his absence, there was a breach in the continuity of his residence, as "continuously" should be given its

common and usual meaning and have a rational sensible construction consistent with the object and purpose of the statute.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ☞68.

For other definitions, see Words and Phrases, First and Second Series, Continuously.]

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by the United States against Christopher James Davis Deans to cancel a certificate of citizenship. From a decree dismissing the suit (208 Fed. 1018), the government appeals. Affirmed.

M. R. Bevington, of St. Louis, Mo. (William H. Martin, U. S. Atty., of Hot Springs, Ark., and W. H. Rector, Asst. U. S. Atty., of Little Rock, Ark., on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree of dismissal of a suit in equity under section 15 of the Act of Congress of June 29, 1906, 34 Stat. 596, 601, U. S. Comp. Stat. Supp. 1911, p. 529, to cancel a certificate of admission to citizenship on the ground that it was "illegally procured." This case was argued and submitted with United States v. Iver Engebretsen Ness, 230 Fed. 950, —— C. C. A. ——, and reference is made to the opinion in that case, which is filed herewith, for the rules and principles of equity which in our opinion govern cases of this nature, as well as for the general provisions and effect of the act of Congress which are there found. The United States asks a cancellation of the certificate on account of alleged errors of the court in the trial of the question of the residence of the applicant, Deans, at the hearing of his application for citizenship. The court which tried that question found the following facts and admitted the applicant to citizenship (In re Deans [D. C.] 208 Fed. 1018):

"The applicant is a native of Scotland. In November, 1906, after he had reached the age of 21 years, he emigrated to the United States. He is a boiler maker by trade and found employment in Schenectady, N. Y., where he resided for one year. He then moved to Pittsburgh, Pa., where he worked at his trade for one year, and in November, 1908, moved to Little Rock, Ark., where he worked in the railroad shops, intending to make that city his permanent home. In July, 1910, he visited his mother in Scotland, being out of the United States for about two months. He then returned to Little Rock, which he has claimed as his residence ever since he arrived in this state. In December, 1910, he was employed by the Isthmian Canal Commission at the shops in Grogona within the Panama Canal Zone, having passed a satisfactory examination before his employment. He remained there four months, when he was discharged for the reason that he was not a citizen of the United States. He thereupon returned to his former home in Little Rock, Ark., where he has resided ever since. At the time he accepted employment in Panama he intended to remain there only a few months, not exceeding a year, and then return to Little Rock.

"His declaration of intention to become a citizen of the United States was made more than two years prior to the filing of this application. He is a man of good moral character, intelligent, thoroughly familiar with our system of government, and in every way qualified to make a good citizen of the United States, if the facts above recited are sufficient to establish the fact

that he has resided continuously in the United States for more than five years, within the meaning of the naturalization acts."

Deans testified at that trial, among other things, that he was residing in the state of New York and working at his trade of a boiler maker from November, 1906, to November, 1907; that he then moved to Pittsburgh, Pa., and resided there until November, 1908, when he moved to Little Rock, Ark., where he first met and became acquainted with the subscribing witnesses to his petition, Grace and Brickhouse; that he then and thereafter intended to make Little Rock, Ark., his permanent home; that he has resided there ever since; but that he spent two months in 1910 in Scotland and England to visit his mother, and four months, from December, 1910, to April, 1911, in the Canal Zone, when he returned to his home in Little Rock, Ark., about April, 1911. Section 10 of the Act of June 29, 1906, provides:

"That in case the petitioner has not resided in the state, territory, or district for a period of five years continuously and immediately preceding the filing of his petition he may establish by two witnesses, both in his petition and at the hearing, the time of his residence within the state, provided that it has been for more than one year, and the remaining portion of his five years' residence within the United States required by law to be established may be proved by the depositions of two or more witnesses who are citizens of the United States."

As Deans had not resided in the state of Arkansas for five years immediately preceding July 3, 1913, he established by the testimony of the two witnesses Grace and Brickhouse, both in his petition and at the hearing, the time of his residence in the state of Arkansas and his good moral character during that time, and proved by the depositions of two competent witnesses, Lunn and McRae, his residence in Schenectady, N. Y., from November, 1906, to November, 1907, and his good moral character during that time.

[1] The reasons why the United States insists that the decree below should be reversed and that Deans' certificate of citizenship should be canceled, are these: First, because there was no evidence of the residence of the applicant in the United States except his own testimony during the time from July 3, 1908, five years before he filed his petition while he was in Pennsylvania, and November 8, 1908, when he arrived in Little Rock, Ark., and established his residence in that state, and there was no evidence whatever of his moral character during those four months. But there was the competent and conclusive testimony of Lunn and McRae that Deans was residing in the United States from November, 1906, to November, 1907, and that he was a person of good moral character during that time, and this was ample evidence to sustain the finding of the court that he continued to reside in the United States and to have the same good moral character from November, 1907, until November, 1908, when the Arkansas witnesses testified that he was still residing in the United States and maintaining the same good moral character. It is a familiar rule of law that residence and character once proved are presumed to continue in the absence of countervailing evidence, and the

ordinary presumptions and rules of evidence are not reversed in suits to cancel certificates of citizenship.

The second reason for the cancellation of the certificate is that while Grace and Brickhouse testified to the applicant's residence and character from November 8, 1908, until July 3, 1913, when he filed his petition for citizenship, they did not know where he was, or what his intention was, or what his character was, during the two months while he was visiting his mother, or during the four months while he was in the Canal Zone. The answer is, however, that his intention, his residence, and his character were presumed to continue during these brief absences, and this presumption was confirmed and demonstrated to be correct by his continuing residence in Little Rock and his continuing good character from April, 1911, until his petition was filed in July, 1913.

[2] And the third and final reason why counsel for the United States insist that the certificate of citizenship should be canceled is that because Deans visited his mother in Scotland and England during two months and worked four months for the United States in the Canal Zone in 1910 and 1911, the evidence before the court which admitted him to citizenship was insufficient to make it "appear to the satisfaction of the court admitting (him) any alien to citizenship that immediately preceding the date of his application he had resided continuously within the United States five years at least." In the words quoted, the act of Congress conferred the judicial power and imposed the judicial duty upon the court which heard the application of this alien to consider all the evidence and arguments presented to it, and to decide and find whether or not he had resided in the United States continuously for five years immediately preceding his application.

That court decided and found that he had done so. That was a finding of fact, and the evidence presented to that court has convinced this court that any other finding would have been a mistake unless the contention of counsel for the United States that the true construction of the act of Congress is that any absence of an alien during any substantial length of time, such as a few months, or a few days, during the five years preceding the date of the filing of his petition, in itself constitutes a fatal breach of the continuity of his residence is correct. But that contention is too specious and ingenious to be sound. It runs counter to the cardinal rule of construction of statutes that the object and purpose of the enacting body may always be considered and should be promoted. The effect of such a construction and the application of similar narrow and drastic rules of interpretation and practice to this act of Congress would be to prevent aliens of good moral character, possessing every essential qualification to be admitted as citizens, and well disposed to the principles of our government from becoming citizens of this nation. But the purpose of Congress in the enactment of this legislation, and the object of the law itself, was not to exclude, but to admit, such aliens to citizenship. It is as much to the interest of the United States as it is to the interest of aliens of this character that they should become citizens of the United States, and the act of Congress which was

enacted to enable them so to become ought to be so interpreted and administered as to accomplish, rather than to hinder or forbid the accomplishment of, that end. The interpretation sought by counsel for the government flies in the face of the cardinal rules of construction that the word "continuously" should be given its common and usual meaning, and that the requirement that the alien "has resided continuously within the United States five years" immediately preceding the date of the filing of his petition should have a rational, sensible construction, and that the natural and obvious meaning of this requirement should be preferred to any curious, narrow, hidden sense which nothing but the exigencies of a case and the ingenuity of a trained and acute intellect would discover. United States v. Ninety-Nine Diamonds, 139 Fed. 961, 965, 72 C. C. A. 9, 13, 2 L. R. A. (N. S.) 185; Stevens v. Nave-McCord Mercantile Co., 150 Fed. 71, 75, 80 C. C. A. 25, 29; Brun v. Mann, 151 Fed. 145, 157, 80 C. C. A. 513, 525, 12 L. R. A. (N. S.) 154; Delaware Ins. Co. of Philadelphia v. Greer, 57 C. C. A. 188, 193, 120 Fed. 916, 921, 61 L. R. A. 137; Standard Life & Acc. Ins. Co. v. McNulty, 157 Fed. 224, 226, 85 C. C. A. 22, 24.

If the statement is made that one resided continuously for five years within his house, or within a town, or a ward, or a city, or a state, or a nation, no one understands, or infers, or believes, that this is a declaration that he has never been outside his house, or his town, or his ward, or his city, or his nation, for a day, or a month, or even more, during the five years, and it is unthinkable, in view of the ordinary meaning and understanding of the requirement of the statute under consideration, that naturalized citizens who, during the five years next preceding the filing of their petitions for admission to citizenship, have been beyond the limits of the United States for a few weeks or months and have nevertheless testified that they have resided continuously within the United States during the five years have all testified to an untruth. The true construction of this requirement of five years' continuous residence within the United States is not that a temporary absence of a day, or a month, or of a few months, during the five years, is necessarily fatal to the continuity of the residence. It is that such an absence presents to the trial court the question of fact whether or not that absence and all the evidence before that court of the intention of the applicant, of the purpose and effect of his absence, and of all the facts and circumstances of the case, prove a breach in the continuity of his residence. United States v. Cantini (D. C.) 199 Fed. 857, 860; United States v. Cantini, 212 Fed. 925, 927, 129 C. C. A. 445, 447.

The learned and exhaustive opinion of Judge Trieber in the original case reported in (D. C.) 208 Fed. 1018, is a conclusive demonstration of the correctness of this conclusion, and it leaves nothing to be said upon this subject but the expression of our affirmance and adoption thereof. And our conclusion is that the evidence in the original case on Deans' application for his admission to citizenship duly established his continuous residence within the United States during the five years immediately preceding the filing of his petition, notwithstanding the fact that during that five years he was temporarily without the

230 F.—61

United States about six months; that no error in the trial of that case was pleaded in the complaint in this case; that Deans' certificate of citizenship was not illegally procured; and that there was no equity in the complaint to cancel that certificate.

The decree dismissing that complaint is, accordingly, affirmed.