## UNITED STATES v. JORGENSON.

(District Court, W. D. Michigan, N. D.   December 2, 1916.)

1. ALIENS ⊂⇒71½, New, vol. 7 Key-No. Series—NATURALIZATION—CANCEL-
LATION OF CERTIFICATE.
    A proceeding to cancel a certificate of naturalization is an equitable
proceeding, and formal irregularities, erroneous reasoning as to the
facts or the adoption of an incorrect theory of law by the court is-
suing the certificate, will not authorize its cancellation, if the applicant,
on the facts truthfully stated by him and his witnesses, was entitled
to the certificate.

2. ALIENS ⊂⇒60—NATURALIZATION—RIGHT TO NATURALIZATION.
    While the admission of an alien to citizenship is a privilege and not
a right, yet, when the terms and conditions prescribed and imposed by
Congress have been complied with, the privilege ripens into a right which
cannot be denied.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 117, 118.]

3. ALIENS ⊂⇒62—NATURALIZATION—CONTINUITY OF RESIDENCE.
    When actual residence within the United States is established, the con-
tinuity of such residence within the naturalization statute is not inter-
rupted by temporary absences for business or pleasure, providing there
is no intention to change or abandon the domicile.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125.]

4. ALIENS ⊂⇒62—NATURALIZATION PROCEEDINGS—QUESTIONS OF FACT.
    Whether an alien has resided continuously in the United States for
five years immediately preceding the filing of a petition for citizenship
is one of fact to be determined from all the facts and circumstances in
each case.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125.]

5. ALIENS ⊂⇒62—NATURALIZATION—CONTINUITY OF RESIDENCE.
    In a proceeding to cancel a certificate of naturalization, facts *held*
to show that an alien whose residence in the United States commenced
in 1900, but who subsequently spent some time in the canal zone in the
employ of the Isthmian Canal Commission, did not intend to change
or abandon his domicile in the United States, and was entitled to nat-
uralization.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125.]

Proceeding by the United States against Jorgen Jorgenson to can-
cel a certificate of naturalization.   Petition dismissed.

Myron H. Walker, U. S. Dist. Atty., of Grand Rapids, Mich.
Miller, Tracy & Eldredge, of Marquette, Mich., for respondent.

SESSIONS, District Judge.   This is a proceeding brought by the
United States against respondent, under the provisions of section 15
of the Act of June 29, 1906 (chapter 3592, 34 Stat. 601 [U. S. Comp.
St. 1916, § 4374]), to cancel a certificate of citizenship issued to him
on November 3, 1915, by the circuit court of Houghton county, Mich.
The petition alleges, in substance, that such certificate of citizenship
was "illegally procured," in that he had not been "a resident of the
United States for a period of at least five years continuously * * *
immediately preceding the date of the filing of his petition" for ad-

mission to citizenship. The facts of the case are not much in dispute. Respondent was born in Norway. He left Norway in 1892 and spent eight years as a sailor, acquiring no new residence. He came to the United States in 1900 and worked at various places in this country erecting dredging machinery. In 1905 he resided in New York City, and there, in that year, declared his intention to become a citizen of the United States. In 1906, he was married at Orange in the state of New Jersey. His wife was of American parentage and a citizen of the United States until their marriage. After his marriage he resided with his wife at Orange, N. J., until July, 1909, when he entered the employ of the Isthmian Canal Commission in the Canal Zone in connection with the construction of the Panama Canal. He was employed by the Canal Commission from July, 1909, to October, 1912, and, during that time, was engaged in the erection and operation of dredging machinery. When he went to the Canal Zone in July, 1909, his wife did not accompany him, but remained at Orange for about six months, when she also went to the Canal Zone to live with him in a house furnished by his employer, presumably pursuant to his contract of employment. Before leaving Orange, he stored his household goods, and claims that he fully intended to return to his residence there. After the completion of his work in the Canal Zone, he did return and purchased a house in Orange. Ten months after his arrival in the Canal Zone, he was granted a vacation of six weeks and returned with his wife to Newark, N. J., took his household goods from storage, and opened and furnished a flat, where they lived for about four weeks. He then returned to his employment in the Canal Zone. His wife did not accompany him at that time, but continued to live in the flat for about three months, and then again stored their household furniture and went to the Canal Zone. While on his vacation in New Jersey, the respondent filed a petition for admission to citizenship. Later he was notified that his petition would be brought on for hearing, and applied for and obtained leave of absence and returned with his wife to Orange, N. J., in March, 1911. In the meantime, the date set for the hearing had passed, and his petition had been dismissed because of his failure to prosecute the same. Upon that occasion he remained in New Jersey four weeks at the home of his wife's parents. He then filed another petition for admission to citizenship and returned with his wife to the Canal Zone, where he remained until October, 1912, when he resigned from his employment with the Canal Commission. After his resignation, he immediately returned to Orange, N. J., and resided there until his removal to Lake Linden in Houghton county, Mich., March 24, 1914. His second petition for admission to citizenship filed in New Jersey was dismissed, without prejudice, upon his own application. In April, 1915, he made and filed a third petition in the circuit court for Houghton county. The hearing upon this petition was adjourned from time to time to enable him to procure the depositions of witnesses in New Jersey and in the Canal Zone. The hearing was finally had on the 3d day of November, 1915, when an order was made by the court admitting him to become a citizen of the United States, and a certifi-

cate of citizenship was issued to him accordingly. A naturalization officer of the United States was present at the hearing and objected to the making of the order and the issuance of the certificate. Respondent's petition, as originally filed in the circuit court of Houghton county, contained a recital that he had resided continuously in the United States since the 10th day of February, 1900, "except from July 12, 1909, to October 8, 1912." After the hearing and on November 10, 1915, the court made an order that the petition be amended by striking out the clause above quoted.

Respondent claims to have resided continuously in the United States since February, 1900, and that, under the circumstances, the continuity of his residence in the United States was not broken by his absences therefrom during his employment in the Canal Zone. It appears beyond dispute that, during the entire time that he was in the Canal Zone, he claimed a residence, and intended to maintain his residence, in Orange, N. J. The government contends that, regardless of his intention, his absence in the Canal Zone for such a long time was fatal to his admission to citizenship.

[1, 2] This is an equitable proceeding (United States v. Ness, 230 Fed. 950, 145 C. C. A. 144; Luria v. United States, 231 U. S. 9, 27, 28, 34 Sup. Ct. 10, 58 L. Ed. 101; United States v. Salomon [D. C.] 231 Fed. 461; and Id., 231 Fed. 928, 146 C. C. A. 124), and hence mere form, unless jurisdictional, must yield to substance. Citizenship granted by a court of competent jurisdiction after full hearing should not be taken away unless, from the facts presented, it clearly appears that such citizenship was illegally procured and that the applicant therefor was not entitled thereto at the time his petition was filed. A court decree which accords with truth and justice ought not to be annulled, either because of formal irregularities in the proceedings leading up to its rendition, or because it was based upon an incorrect theory of law, or erroneous reasoning as to facts. If, at the time he filed his petition and at the time his application was granted, respondent, under the facts truthfully stated by him and his witnesses, was entitled to a certificate of citizenship, it would be unjust and inequitable to deprive him thereof merely because the court may have been mistaken, not in the result reached, but in some of its deductions derived from the facts presented. While the admission of an alien to citizenship is a privilege and not a right, and while Congress may prescribe the terms and impose the conditions upon which such privilege may be enjoyed, yet, when the terms and conditions so prescribed and imposed have been complied with, the privilege ripens into a right which cannot be denied. United States v. Shanahan (D. C.) 232 Fed. 169.

[3, 4] The courts are agreed that, in applying the provision of the naturalization statute which requires continuous residence within the United States for a period of five years next preceding the filing of the petition for citizenship, two rules should be followed and observed: (1) When actual residence within the United States is once established, the continuity of such residence will not be interrupted by temporary absences from the United States for the purpose of

either business or pleasure, provided there is no intention to change or abandon the domicile. And (2) the question whether an alien has resided continuously in the United States for the required five years is one of fact to be determined from all the facts and circumstances in each particular case. United States v. Mulvey, 232 Fed. 513, 146 C. C. A. 471; United States v. Cantini (D. C.) 199 Fed. 857, and Id., 212 Fed. 925, 129 C. C. A. 445; In re Deans (D. C.) 208 Fed. 1018, and United States v. Deans, 230 Fed. 957, 145 C. C. A. 151; United States v. Shanahan (D. C.) 232 Fed. 169; In re Timourian (D. C.) 225 Fed. 570; In re Schneider (C. C.) 164 Fed. 335; In re An Alien, 1 Fed. Cas. 417; Anonymous, Fed. Cas. No. 465; Anonymous, 1 Fed. Cas. 1016; United States v. Aakervik (D. C.) 180 Fed. 137; United States v. Simon (C. C.) 170 Fed. 680; In re Brash (D. C.) 235 Fed. 1003.

[5] The intention of an alien as to his residence or domicile once established is a most important, and usually a controlling, factor in determining his right to citizenship. The adoption by the courts of a fixed rule as to the time of absence from the United States which, in every case, shall bar an alien from admission to citizenship, would be both inconsistent and illogical and would constitute forbidden judicial legislation. An absence of a single day accompanied by an actual intention to change or abandon residence would be fatal, while an absence of one or more years with a continuing and fixed intention to return and to maintain meanwhile a previously established residence might not be a bar to the granting of citizenship. The question of intention is always one of fact to be determined from both actions and declarations, and ofttimes conduct is more persuasive than words. If an alien who had acquired a domicile in the state of Michigan were to cross St. Marys river into Canada and there knowingly take the oath of allegiance to the British Sovereign, he would not be heard to say that he had not thereby abandoned any previous intention to become a citizen of the United States; but if he had gone into Canada for a temporary purpose intending to return and had been prevented from returning by an accident, sudden illness, or other cause beyond his control, and upon his recovery had immediately returned, his absence from the United States, whatever its duration, would not prevent his naturalization.

Respondent is a man of good moral character, highly educated and a skilled mechanic, will make a most desirable citizen, and is entitled to be and remain a citizen of the United States unless his absences from the United States while in its employ in the Panama Canal Zone were so prolonged as to preclude his obtaining and retaining the privilege of citizenship. In good faith he acquired a residence and domicile in the state of New Jersey, which he has never intentionally abandoned. When he left the United States it was with the sole purpose of entering the employ of this government in territory under its control and dominion and engaging in work requiring great skill and ability. His actions show conclusively that, during the entire time of his stay in the Canal Zone, his fixed intention and purpose was to maintain his residence in the state of New Jersey and to become a citizen of the

United States. Twice he returned to New Jersey to accomplish such purpose. His failure so to do was owing to circumstances fairly beyond his control. There is no pretense that he intended to acquire either residence or citizenship in Panama. In this respect his position is much like that of a sailor who enlists in the Navy of the United States or is employed upon voyages to foreign lands. Courts uniformly hold that an alien sailor who has actually in good faith acquired a residence within the United States is not precluded from citizenship because of prolonged absences upon voyages to other countries. United States v. Rockteschell, 208 Fed. 530, 125 C. C. A. 532; In re Schneider (C. C.) 164 Fed. 335. If an alien, who intends to become a citizen of the United States and for that purpose has acquired a residence therein, should go to a foreign country as a servant of an officer of this government stationed abroad and should immediately return upon the expiration of his service, would it be contended that such an absence, however prolonged, would be a bar to his citizenship? Clearly not. Yet that is the exact situation of this respondent.

To sustain its contention, the government relies with confidence upon the case of United States v. Mulvey, 232 Fed. 513, 146 C. C. A. 471. It must be admitted that the language of the opinion in that case, considered apart from the facts there presented, justifies such confidence. But the facts and conditions of that case were wholly unlike those shown by this record, and the court there expressly held that its decision must be confined to the facts of that particular case and declined to lay down a hard and fast rule applicable to all cases. Moreover, while the court found that the alien intended to return to the United States and resume his former residence therein, there was no finding, and the facts did not indicate, that, during the entire period of his absence in Ireland, he had a continuing intention to presently maintain his domicile in this country. Here it conclusively appears that respondent not only at all times intended to, but at every opportunity actually did, maintain his residence and domicile in the state of New Jersey.

Again, in the Mulvey Case, the court said:

"The purpose of requiring aliens applying for citizenship to reside continuously within the country for five years is, not only to satisfy the government as to the good faith of the applicant and as to his good character, but it is also to afford the alien a sufficient opportunity to understand and familiarize himself with our institutions and mode of government."

It is manifest that, so far as respondent is concerned, the purpose of the statute has been fully accomplished. Being in the employ of this government under its officers and in one of its most stupendous and important works, he had the best possible opportunity to understand and familiarize himself with our institutions and mode of government and the requirements and duties of good citizenship, and the government officials were afforded an equally favorable opportunity to satisfy themselves as to his good faith, his good character, and his fitness to become a citizen.

While the difficulties of this case are great, the equities are all with respondent. Conceding the premise (as every one must and all courts

do) that the actual physical presence of an alien in the United States during the entire statutory five-year period is not, under all circumstances, necessary to admission to citizenship, it follows from the peculiar facts and conditions of this case that respondent has complied with both the letter and the spirit of the law and was and is entitled to his certificate of naturalization. No other conclusion will square with justice and right.

The petition will be dismissed.