LEE ROSENBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10086. Promulgated February 8, 1928.

*Herbert S. Brussell, Esq.,* and *E. Walter Beebe, Esq.,* for the petitioner.

*A. S. Lisenby, Esq.,* for the respondent.

OPINION.

SMITH: The petition filed in this proceeding alleges error in that the respondent has denied the petitioner the right to file returns of income under the provisions of Treasury Decision 3071 for the calendar years 1919 and 1920, domicile being claimed in Texas. The notice of deficiency from which this appeal is taken stated:

After consideration of the evidence on the first issue, it is the opinion of this office that you are not entitled to file returns on the community property basis. This conclusion has been reached inasmuch as it is apparent you had extensive business activities in New York and had no intention of establishing domicile in the state of Texas.

The respondent submits that there is before the Board only a moot question, inasmuch as the petitioner has alleged nothing more than that his domicile was in the State of Texas during the years 1919 and 1920 and has submitted no other evidence than that calculated by him to establish the fact of his domicile in that State during those years; that the petitioner has not alleged in his petition and has not submitted any evidence to the Board to show that any of the income attributed to him for the years 1919 and 1920 was community property or community income.

The principal part of the evidence of record is concerned with the question whether the petitioner was domiciled in Texas during the taxable years, the respondent contending that he was not domiciled there.

The general rule as to residence and domicile is stated at 9 R. C. L. 539, as follows:

It is customary to distinguish between residence and domicil, on the ground that any place of abode or dwelling place constitutes a residence, however temporary it may be, while the term "domicil" relates rather to the legal residence of a person or his home in contemplation of law. As a result one may be a resident of one jurisdiction although having a domicil in another.

"Residence" is defined by the laws of Texas as follows:

The "residence" of a single man is where he usually sleeps at night; that of a married man is where his wife resides, or if he be permanently separated from his wife, his residence is where he sleeps at night. * * * (Vernon's Annotated Texas Statutes (Civil Statutes) vol. 9, art. 2958.)

The allegations of the petitioner and the testimony of the petitioner identify and locate the exact spot which the petitioner claims as his domicile as the house upon his farm near Texarkana. Neither

the petition, the testimony, nor the theory of the case identifies or locates the domicile to be at any other spot.

With respect to the amount of time that Rosenberg spent in Texas during 1919 and the question as to whether his business interests there were increasing or decreasing, Lovelady, his farm and business manager, testified substantially as follows:

That the petitioner made a visit to Texarkana accompanied by his wife in September or October, 1918, and at the same period of the year in 1919 and 1920; that he made only one visit each year; that he was uncertain as to just how long he stayed on each visit; that the petitioner and his wife stopped at a hotel in Texarkana, and that during the daytime Rosenberg made trips to his farm; that practically all of Rosenberg's important business had been away from Texarkana since January 1, 1919; that Rosenberg had offered his farm for sale. As to whether the petitioner was actually in Texas at any time during 1919 or 1920 Lovelady was in doubt. His testimony upon that point was as follows:

Q. On recross-examination you referred to his coming down in 1919 and 1920; I believe you stated to me that you were not sure he was down here?
A. I wasn't, and I am not now.
Q. Don't know whether he did or not, and whether he stayed a week or months?
A. I could not say.
Q. Just one trip a year?
A. Yes, sir.
Q. One trip a year, and you don't know whether he stayed one month or eight months?
A. Couldn't say how long he stayed.

The testimony of another witness for the petitioner, Heilbron by name, was direct, specific, unevasive and certain. Heilbron had resided in Texarkana for about 50 years and had known Rosenberg for about 35 years. On cross-examination he testified as follows:

Q. Do you know whether or not he [petitioner] ever resided at Great Neck, New York?
A. Yes.
Q. You know how long he resided there?
A. That is a summer home, and has been for several years, and still is.
Q. Was it in 1919 and 1920?
A. I am not positive.
Q. Did you ever visit in that home?
A. Yes.
Q. Did you visit in 1919 and 1920?
A. I don't think so.
Q. Do you know whether he owned that home at that time?
A. I think he did, and I think I did visit in 1920.
Q. During the winter months did he have quarters in New York City?
A. Yes.

Q. Is that at the St. Regis Hotel?

A. Yes.

Q. Do you know whether or not in 1919 and 1920 he resided or lived in Texarkana in the sense that it is commonly understood that a man lives in a place?

A. No; he did not.

Q. Do you know how many visits he made to Texarkana in 1919?

A. No.

Q. Do you know whether or not he was here any length of time in 1919?

A. His stay was not long.

Q. Did his wife reside in the house on the farm in 1919?

A. I couldn't say.

Q. Did his wife ever live in it?

A. I don't know.

Q. Was Rosenberg or his wife in Texarkana any length of time during these years?

A. No.

Q. After January 1, 1919, do you know whether Mr. Rosenberg, or Mr. Rosenberg and his wife had lived or resided on the farm.

A. He did not.

Q. Then his occupancy of the home that you testified about was prior to his marriage?

A. Yes.

Q. His principal occupation, and since his marriage, has been in the cotton business in New York?

A. Yes.

Q. A very little of the cotton business in Texarkana?

A. I am not informed enough to answer that.

Q. You don't know of any large activities in the cotton business here after his marriage?

A. Only that he bought cotton here.

Q. Bought some?

A. Yes.

Q. Was his activities large or small?

A. I suppose they were large; I don't know.

Q. Do you know of any meetings of the Elks Club, Chamber of Commerce or Country Club that he has attended since 1919?

A. No.

Q. Do you know whether or not it is necessary for Mr. Rosenberg to be a resident of Texarkana to be a member of these organizations?

A. It is not necessary.

Q. From your intimate acquaintance with him, wouldn't you state that he (Rosenberg) had been living in New York from the time of his marriage to the present date?

A. Yes.

It is well settled that an individual may have many residences but can have only one domicile. In the general acceptation of the term a residence is the place where an individual actually lives or has his abode, that is, where he eats and sleeps. The general rule is as stated and defined in the Texas statutes above cited.

In the opinion of the Board the evidence establishes that the residence of the petitioner during the years 1919 and 1920 was in the State

of New York. The question is whether during the same years his domicile was in the State of Texas.

The leading case in this country on the subject of domicile is the case of *Ennis* v. *Smith*, 14 Howard 400. In that case the United States Supreme Court had for decision the question as to where General Kosciusko was domiciled at the time of his death, and after reviewing the authorities the rule was announced by Mr. Justice Wayne, as follows:

* * * Where a person lives, is taken *prima facie* to be his domicil, until other facts establish the contrary. Story's Com. 44, 6 Rule, *Bruce* v. *Bruce*, 2 Bos. & P. 228, Note 239; 3 Ves. 198, 291; Hagg. Cons. 374, 437. It is difficult to lay down any rule under which every instance of residence could be brought, which may make a domicil of choice. But there must be to constitute it actual residence in the place, with the intention that it is to be a principal and permanent residence. That intention may be inferred from the circumstances or condition in which a person may be as to the domicil of his origin, or from the seat of his fortune, his family and pursuits of life. Pothier, Introd. Gen. aux Cout. p. 4; D'Argentie, Cout. Art. 449; Touillier, lib. 1, tit. 3, n. 371; 1 Burge, Com. Confl. Laws, 42, 43. A removal which does not contemplate an absence from the former domicil for an indefinite and uncertain time is not a change of it. But when there is a removal, unless it can be shown or inferred from circumstances that it was for some particular purpose, expected to be only of a temporary nature, or in the exercise of some particular profession, office, or calling, it does change the domicil. The result is, that the place of residence is *prima facie* the domicil, unless there be some motive for that residence not inconsistent with a clearly established intention to retain a permanent residence in another place. The facts in the case place the residence of Kosciusko in France, under the principle just stated.

The evidence does not show that the petitioner has had nor does it show that he now has any immediate or definite intention of returning to Texarkana to reside at any particular time. In fact, on direct examination Rosenberg testified as follows:

Q. And have you the intention to revert and return to Texarkana at all times as your home and your domicile?

A. I feel that that is my home and I will go back as much and as often as it is possible to do so.

It, therefore, appears that it is not Rosenberg's intention to reside permanently in or near Texarkana, and to depart therefrom occasionally, but it appears that it is his intention to stay in New York and to go back to Texarkana occasionally when his affairs in New York will permit.

In 9 R. C. L. 540, it is stated that:

* * * In general terms, one may be designated as an inhabitant of that place which constitutes the principal seat of his residence, of his business pursuits, connections, attachments, and of his political and municipal relations. * * *

In the case of *Ex Parte Blumer*, 27 Tex. Repts. 734 (1865), the Supreme Court of the State of Texas had for decision the question as to whether one Samuel Blumer was domiciled in Texas and subject to conscription for the Confederate armies. The facts were that Blumer was born in the Republic of Switzerland; that he came to Texas on business in 1854 and remained for a few months, and then returned to Switzerland. He came back to the United States in 1859 and arrived in Texas in June, 1861. He remained in ill health after his arrival in Texas for something like two years, and after his recovery was destitute of means and was unable to earn more than enough to support himself. He had at all times declared it to be his intention to return to Switzerland and had at all times denied an intention to make Texas his permanent home or domicile. He was a single man, and when enrolled as a conscript in July, 1864, was 32 years of age.

In deciding whether Blumer was domiciled in Texas and subject to conscription for the Confederate armies, the Supreme Court of the State of Texas exhaustively reviewed the authorities on domicile. It stated:

* * * Descriptions of domicile are more easy and not less intelligible than efforts at a definition of it. In the case of *Bruce* v. *Bruce*, in the House of Lords, the Chancellor, Lord Turlow, said, "But what will make a person's *domicil* or home—must occur to every one. A British man settles as a merchant abroad; he enjoyes the privileges of the place; he may mean to return when he has made his fortune; but he dies in the interval; will it be maintained that he had his domicil at home?" (Bosanquet & Puller's R., 229 and note.)

Justice Washington in the Venus case, says, "If it sufficiently appear, that the intention of removing was to make a permanent settlement, or for an indefinite time, the right of domicil is acquired by a residence even of a few days." (8 Cranch R. 279; 12 U. S. 279).

Story says, "In a strict and legal sense that is properly the domicil of a person where he has his true, fixed and permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." (Story Conf. of Laws, 49). Again he says, "Two things must concur to constitute domicil; first residence, and secondly the intention of making it the home of the party." (Id., 53). And again he says, "Vattel has defined domicil to be a fixed residence in any place, with an intention of always staying there. But this is not an accurate statement. It would be more correct to say, that that place is properly the domicil of a person in which his habitation is fixed without any present intention of removing therefrom." (Id., 52.)

The court appeared unqualifiedly to have approved the proposition expressed in *Bruce* v. *Bruce, supra,* and *Ennis* v. *Smith, supra,* that the place of residence is *prima facie* the domicile of a person. It approved the statement of Mr. Justice Washington as expressed in *The Venus,* 8 Cranch, 278, that the intention of remaining in a

place, though not avowed, is presumed from long or continued residence, where such residence is not consistent with facts showing a permanent domicile elsewhere. It referred to the statement of Weston, Chief Justice, in *Greene* v. *Windham*, 13 Maine R., 228, that,

Whoever removes into a town for the purpose of remaining there an indefinite period, thereby establishes his domicil in that town. It is not necessary that he should go with a fixed resolution to spend his days there. He might have in contemplation many contingencies which would induce him to go elsewhere. Some persons are more restless in their character and migratory in their habits than others, but they may and do acquire a domicil wherever they establish themselves for the time being, with an intention to remain until inducements may arise to remove.

After quoting Weston, the Texas court stated:

These views are directly applicable to citizens of the country, when the question is raised as to what town, county or state they belong.

The court quoted with approval the statement of Sir W. Scott (citation not supplied) that, "Time is the grand ingredient in constituting domicil." And the court then remarked that—

In most cases it is unavoidably conclusive. It is not unfrequently said, that if a person comes for a special purpose, *that* shall not fix a domicil. This is not to be taken in an unqualified latitude, and without some respect to the time which such a purpose may or shall occupy; or if the purpose be of such a nature as may probably or does actually detain the person for a great length of time, a general residence might grow upon the special purpose.

In considering the question as to what weight should be given to the acts of the person and the facts and circumstances of the case in determining whether the declarations of the person should be controlling, the court cited the case of *Watson* v. *Simpson*, 8 La. An Rep. 337, and the opinion of the court as therein expressed by Merrick, C. J., as follows:

It is evident that, in most of his conversations, and whenever he had an opportunity to manufacture evidence, Simpson pretended to be a resident of New Orleans, whilst, during the whole of three years he was absent, he was enjoying all of the advantages of a real resident in New York, except voting, and this he seemed to decline, merely because it might affect his Louisiana domicil.

Courts of justice must look to the real facts of the case, and where it appears that the declarations of a party are made with reference to making testimony in his favor, they must be rejected.

After considering the fact of Blumer's long ill health and then destitute circumstances with his admitted inability to obtain funds sufficient to return to Switzerland from Texas, the court stated:

These facts being proven, his remaining here, as he has done, is not inconsistent with the expressed intention of not making Texas his home and of returning to Switzerland. He is detained by his physical condition and his necessities. These explain why he is here, when he would be at another place. When time and opportunity shall have produced a repugnance between

the facts and his declarations, which before long they might, then his declarations could not be regarded any longer as a true index to his intention. But until that occurs his being here is as fully explained as though it were shown that he had come here on a special or particular business, as a traveler or a visitor.

The Supreme Court of the State of Texas then summed up and decided the case as follows:

The case then stands thus: Blumer being a native of Switzerland, having once been here and gone back, leaves his home to come to Texas—after two years and a half here gets sick, declaring then and continually afterwards his intention not to make Texas his home, and to return to Switzerland as soon as he can do so, but is prevented by his sickness and destitution for three years, during which time he labors upon hire when he can in the ordinary avocations of the country.

The facts which draw him to his original domicil are not strong—far from it. But the residence here is fully explained to be not inconsistent with the declared intention to return, and not to acquire a new one. In the absence of any such declarations, his residence and conduct here might easily rebut any claim he might now make to have retained his original domicil, by the mere fact of being a foreigner. In view of the mode in which he chose to shape his declarations of intention, (not to make this his home, but to return to Switzerland as soon as he was able and got money enough to bear his expenses,) had he not shown that, from sickness and destitution he was not reasonably able to go, his declarations would have been impeached, and being found untrue in part, might have been wholly disregarded as constituting an index to his intention, and his three years' residence and conduct here would have left in full force to establish a domicil here, and thereby negative any claim to his foreign original domicil, founded, as it would then be, only upon the established fact of his being a foreigner.

His declarations of intention stand now unimpeached by other facts—are not unnatural or unreasonable in themselves, and must turn the scale in favor of Switzerland as his domicil.

The rule as expressed in the case of *Ex Parte Blumer* is the established rule of law upon the subject. It is stated in practically the same language in 9 R. C. L. 542:

* * * In other words, to effect a change of residence or domicil, there must be an actual abandonment of the first domicil, coupled with an intention not to return to it, and there must be a new domicil acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home; and the acts of the person must correspond with such purpose. On a question as to loss of domicil, the intent to return or the *animus revertendi* is of equal importance for the same purpose. Sometimes the intention of the person has been definitely expressed and can be proved by his written or spoken declarations. In other cases the conduct has been such as to show the intention. In general, all the circumstances of the particular case should be taken into consideration in determining the person's intention. However migratory the habitation may be, and however difficult on that account may be the proof of the intent to remain, yet if proved, residence combined with intention to remain will constitute domicil. But intent alone, without actual residence, cannot determine the domicil; and, conversely, a domicil once established cannot be given up by merely

intending to do so, and without actual removal. Therefore one who has resided and carried on business for years in one jurisdiction cannot for his own purposes insist that his domicil is in another. The facts may belie the expressed intent to retain a domicil actually given up.

The rule is further stated in 9 R. C. L. 557, as follows:

* * * Domicil is presumed prima facie, to be at that place where the party is shown to be, or where he is resident. This presumption controls unless rebutted by evidence determining his domicil in some other place at that time. * * * Continuous residence for a long period of time in a given locality raises the presumption that there was the intent to remain and become domiciled there. * * *

In the recent case of *Cooper* v. *Reynolds*, 24 Fed. (2d) 150, Judge Kennedy stated:

In all questions touching the determination of residence or domicile of an individual, it has always been a cardinal principle laid down by the courts that the intention of the person whose residence is being considered, is most persuasive. A fair example of the general expression of the courts may be found in the case of *United States* v. *Jorgenson*, 241 Fed. 412, where at page 415 that court said:

" The intention of an alien as to his residence or domicile once established, is a most important, and usually a controlling factor in determining his right to citizenship. * * * The question of intention is always one of fact to be determined from both actions and declarations, and ofttimes conduct is more persuasive than words."

In the instant case the petitioner testified that he had never had any idea of changing his residence at any time from Texarkana. We can not doubt, however, from the evidence that the petitioner actually did change his residence from Texarkana. He has not lived at Texarkana since his marriage. He has had an actual residence in New York State since 1918. That is where his principal business interests have been since then. The place of residence is *prima facie* the place of domicile. Apparently the only attraction which Texarkana had for the petitioner since he left there prior to 1918 was his farm at or near Texarkana, which he was holding for sale. The evidence does not show a clear intention to resume a residence upon it. We conclude that the petitioner's domicile in 1919 and 1920 was in New York State.

In this case the petitioner has assumed that all that it was necessary for him to prove, in order to overcome the presumption of correctness on the part of the respondent in determining deficiencies, was that he was domiciled in Texas during the taxable years. We think, however, that if that had been proved, it would not necessarily follow that the deficiencies found by the respondent were erroneous. From the evidence we can not determine the amount of community income, if any, and the amount of separate income of the petitioner for 1919 and 1920. What would have been the status

614

of the income received by the wife, if both parties had been domiciled in Texas, is also not clear. It simply represented profits from the use by petitioner of his funds in transactions conducted for the benefit of his wife. Furthermore, substantially all of the income of both spouses was earned in New York State, a noncommunity-property State, and never taken to the State of Texas. Whether any of this income would be community income if received by persons domiciled in Texas, it is unnecessary for us to decide. Cf. *Abraham B. Johnson, et al.*, 7 B. T. A. 820.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Sternhagen and Murdock concur in the result only.
Marquette, Phillips, and Siefkin dissent.

