### UNITED STATES v. CANTINI.

(District Court, W. D. Pennsylvania. October 8, 1912.)

#### No. 2.

ALIENS (§ 62*)—NATURALIZATION—CONTINUOUS RESIDENCE—"RESIDED CONTINUOUSLY."

The provision of Naturalization Act June 29, 1906, c. 3592, § 4, par. 4, 34 Stat. 598 (U. S. Comp. St. Supp. 1911, p. 531), which requires an applicant for naturalization to prove to the satisfaction of the court that immediately preceding the date of his application he has "resided continuously" within the United States five years at least, does not mean that the applicant must not have been outside of the territory of the United States during the preceding five years, but has reference to changes of domicile only; and the fact that an alien within that time returned temporarily to his native country on a visit, without any intention of remaining or abandoning his residence in this country, did not defeat his right to naturalization, and the length of his absence is material only as evidence on the question of intention.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125; Dec. Dig. § 62.*]

In Equity. Suit by the United States against Giacinto Cantini. Decree for defendant.

H. S. Lydick, Asst. Dist. Atty., of Pittsburgh, Pa., for the United States.

G. I. Zsatkovich, of Pittsburgh, Pa., for defendant.

ORR, District Judge. This is a proceeding on the part of the United States for the cancellation of a certificate of naturalization issued to the defendant by this court. The contention of the United States, as set forth in the bill, is that the certificate of naturalization was illegally procured, because the court was without jurisdiction, because the defendant within a period of five years immediately preceding the date of his certificate was for a time without the United States. There is no allegation that the defendant was party to any fraud, or that the defendant concealed from the court which issued the certificate of naturalization any of the facts

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

upon which the government now bases its present contention. All the material facts appear in the following averments of the answer:

"That I emigrated to the United States from Italy on March 17, 1899; that I continued physically to reside in the United States until September 5, 1908, at which time I went, as was shown and proved to the satisfaction of the district attorney for the United States for the Western district of Pennsylvania, Judge Orr presiding, to visit my parents, expecting to be back in three months; that at that time I requested my employers to retain my place for me; that owing to my marriage, and birth of a child, and other circumstances, my stay was prolonged, and that I returned to the United States on August 22, 1910; that I never abandoned, nor did I ever intend to abandon, my legal residence in the United States, nor did I at any time intend nor did establish a permanent residence outside of the United States; that I proved the foregoing by the testimony of myself and other witnesses, and satisfied the court at the hearing held on March 14, 1911."

The United States has set this cause down for hearing upon bill and answer. Therefore the allegations in the answer are to be taken as true. Banks v. Manchester, 128 U. S. 244, 9 Sup. Ct. 36, 32 L. Ed. 425.

Prior to the passage of the act of June 29, 1906 (34 Stat. 596, c. 3592 [U. S. Comp. St. Supp. 1911, p. 531]), which was intended to create a uniform system of naturalization, there was no way in which a certificate of naturalization could be attacked in a collateral proceeding. In Spratt v. Spratt, 4 Pet. 393, 408 (7 L. Ed. 897), Chief Justice Marshall says:

"The various acts upon the subject submit the decision on the right of aliens to admission as citizens to courts of record. They are to receive testimony, compare it with the law, and to judge upon both law and fact. This judgment is entered on record as the judgment of the court. It seems to us, if it be in legal form, to close all inquiry, and, like every other judgment, to be complete evidence of its own validity."

The act of Congress above referred to recognizes the law to have been as stated by Chief Justice Marshall, because it provides in its fifteenth section a means whereby a certificate of citizenship may be canceled. That section provides:

"That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured."

There are other provisions in the section relating to process, which are not necessary to be mentioned. This section has been declared to be constitutional by the Supreme Court in Johannessen v. United States, 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066. This court has jurisdiction of the present proceeding.

There remains but the single question whether or not it had jurisdiction to admit the defendant to citizenship upon all the facts as they are stated in his answer. The contention on the part of the government is that the court should not have issued the certificate of naturalization, because the defendant had not been continuously

within the United States during the five years preceding the date of the certificate. The Naturalization Act provides in the fourth paragraph of section 4:

"It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the state or territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same. In addition to the oath of the applicant, the testimony of at least two witnesses, citizens of the United States, as to the facts of residence, moral character, and attachment to the principles of the Constitution shall be required, and the name, place of residence, and occupation of each witness shall be set forth in the record."

Section 10 of the act is as follows:

"That in case the petitioner has not resided in the state, territory, or district for a period of five years continuously and immediately preceding the filing of his petition he may establish by two witnesses, both in his petition and at the hearing, the time of his residence within the state, provided that it has been for more than one year, and the remaining portion of his five years' residence within the United States required by law to be established may be proved by the depositions of two or more witnesses who are citizens of the United States, upon notice to the Bureau of Immigration and Naturalization and the United States attorney for the district in which said witnesses may reside."

It was clearly not the purpose of Congress to intend that an alien seeking citizenship should not leave the territorial limits of the United States within a period of five years preceding his application. Had that been the intention, Congress would have used some language like that used in the Naturalization Act of March 3, 1813 (2 St. at Large, 811, c. 42, § 12), there being in that act a provision that the applicant should—

"for the continued term of five years next preceding his admission as aforesaid have resided within the United States without being at any time during the five years out of the territory of the United States."

But, apart from that, to hold that the language of the present act has the same meaning as is expressed in the act of 1813 would be a conclusion wholly unjustified. At the date of the former act opportunities for communication between residents of foreign states were few, and the expense and perils of travel were great. Under those circumstances, the uninterrupted continuance of the applicant's stay within the limits of the United States demanded by the act of 1813 might not be deemed unreasonable. If that were the law to-day, the alien who gratified his desire to see Niagara Falls from the Canadian side of the river must forego his application for citizenship for a period of five years thereafter.

In the present case, however, the United States does not insist that there shall be no departure from the territory of the United States during the period of five years, but urges that the departure for the length of time in which the defendant was absent from the United States is an unreasonable departure, and therefore, because his de-

parture was unreasonable, the court had no jurisdiction to admit him to citizenship. The court does not believe that the question of the reasonableness or the unreasonableness of an applicant's absence from the United States is a fact which should be determined by it, except in connection with the fact of residence. The fact of residence and the continuity of that residence must be determined by the court, and in determining the fact of residence there must be a consideration of the facts which express the intention of the applicant. If the facts do not clearly show an intention on the part of the applicant to abandon a residence which he has acquired in this country, he must be deemed to be continuing to reside here. In the present case it appears that the defendant had been in this country for considerably over nine years when he returned to Italy to visit his parents for a period of three months; that he requested his employers to retain his place for him, and that, owing to his marriage and the birth of a child and other circumstances, his stay was prolonged; that he never abandoned, nor intended to abandon, his residence here and establish a permanent residence elsewhere; that those facts were proven, not alone by the declaration of the defendant, which is unsafe to rely upon in questions of this kind, but by the oaths of other witnesses at the hearing.

This case is somewhat analogous to In re Schneider (C. C.) 164 Fed. 335. That was the case of a sailor, who it was held did not abandon his residence by going to sea. The learned judge held in that case that the word "continuously" cannot be construed literally. It is probable that the word was used to prevent a change of domicile or change of residence within that period, as in the case of one who abandoned his intention to reside in the United States, and left this country to take up his residence elsewhere, and who, after finding that conditions were not satisfactory to him in the new place, returns again and seeks to make use of a formerly abandoned privilege.

It is urged, further, by the government, that the witnesses required as to the facts of residence and good moral character while residing in the United States during the five years preceding the application for naturalization cannot know enough about the man to testify as to his character. We do not think this should be given the weight demanded for it. It was never contemplated that the witnesses as to character should be constantly with the applicant. Evidence as to good character can only be matter of opinion, and witnesses may be in touch with an alien party, who is absent, through correspondence and relatives and mutual friends.

Nor do we think there is much in the proposition that by the long absence he is losing the civilizing influences of the United States and full opportunity to become familiar with its constitutional government. There is no doubt that long temporary absence from the United States would in many cases be deemed to be detrimental to the applicant for naturalization. But it must be considered that advanced civilization is not limited to this country, and that knowledge of our Constitution and the machinery of our government is sometimes possessed in a marked degree by those who are citizens and residents of foreign

countries. The mental qualifications (exclusive of certain prescribed educational requirements), as well as the moral qualifications, of applicants for citizenship, are to be determined by the court, to whom it shall be made to appear that the applicant is—

"attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same."

Under all the facts, and the law applicable thereto, the court is of opinion that defendant's certificate of naturalization was not illegally procured. The bill must therefore be dismissed, at the costs of the plaintiff.

Let an order be drawn.