UNITED STATES v. GRIMINGER.

(District Court, N. D. Ohio, W. D. October 12, 1916.)

No. 2524.

1. ALIENS ⬩71½, New, vol. 7 Key-No. Series—NATURALIZATION—CONSTRUCTION OF STATUTE.

As the laws of the United States afford very reasonable terms of admission to citizenship, doubts as to whether an alien has performed the conditions precedent required by statute should be resolved in favor of the government.

2. ALIENS ⬩62—CITIZENSHIP—RESIDENCE—"RESIDED CONTINUOUSLY."

An alien who, after 8 years' residence in the United States and declaration of his intention to become a citizen, returned to the country of his nativity, remaining there over 2½ years, during which time he married. After his return to the United States, and 5 years after making declaration of intention, the alien applied for naturalization, having spent about one-half of the 5-year period in the country of his nativity. *Held*, that under Act June 29, 1906, c. 3592, § 4(4), 34 Stat. 596 (Comp. St. 1913, § 4352[4]), requiring an alien to have resided continuously within the United States for 5 years immediately preceding his petition for final papers, the alien was not entitled to admission to citizenship, although the term "resided continuously" does not necessarily preclude any departure from the United States; the purpose of the residence requirement being to enable the alien to acquaint himself with the language and customs of the country of his adoption.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125; Dec. Dig. ⬩62.

For other definitions, see Words and Phrases, Second Series, Resided Continuously.]

3. ALIENS ⬩62—CITIZENSHIP—"RESIDED."

Under Act June 29, 1906, c. 3592, § 4 (4), 34 Stat. 596 (Comp. St. 1913, § 4352 [4]) requiring an alien to have resided within the United States for five years immediately preceding his petition for final papers, the term "resided" means "lived."

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125; Dec. Dig. ⬩62.

For other definitions, see Words and Phrases, First and Second Series, Reside.]

4. ALIENS ⬩71½, New, vol. 7 Key-No. Series—NATURALIZATION—ATTACK ON CERTIFICATE.

Under Act June 29, 1906, § 15 (Comp. St. 1913, § 4374), providing for cancellation of certificate fraudulently or illegally procured, the naturalization certificate of an alien may be attacked where he had not complied with the requirement of 5 years' continuous residence in the United States before petition for final papers, even though he made a candid disclosure of the facts to the court granting the certificate.

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. ALIENS ☞ 1½, New, vol. 7 Key-No. Series—NATURALIZATION—ATTACK ON CERTIFICATE.

 As the state court issuing a certificate of naturalization received its authority from act of 1906, a certificate issued by such state court may be attacked in the federal District Court on the ground that the requirements of residence had not been met, and the attack cannot be defeated on the ground that the state court had exclusive jurisdiction, and that its judgment was not reviewable.

 Proceedings by the United States against Joseph Max Griminger, to cancel a certificate of naturalization. Demurrer to petition overruled.

 E. S. Wertz, U. S. Atty., of Cleveland, Ohio, and John S. Pratt, Asst. U. S. Atty., of Toledo, Ohio.

 A. H. Miller, of Toledo, Ohio, for defendant.

 KILLITS, District Judge. [1, 2] Joseph Max Griminger came to the United States in 1902, as an emigrant from Austria-Hungary. In September, 1910, he declared his intention to become a citizen of the United States. In July, 1911, he went back to Austria on a visit, expressing his intention of returning to the United States as his place of residence. In Austria he married, and a child was there born to him, which facts are his explanation for his detention in that country for at least 2 years and 5 months, or until some time in December, 1913. In October, 1915, he appeared before the common pleas court of Lucas county, Ohio, as an applicant for naturalization, and was admitted to citizenship, although the fact transpired that during the 5 years immediately preceding the filing of his petition for admission he had spent these 2 years and 5 months continuously in Austria. By the familiar terms of the statute (Comp. St. 1913, § 4352[4]) he could be legally admitted to citizenship in this country only when it appeared as a jurisdictional fact to the court admitting him that he had "resided continuously" within the United States for a period of 5 years immediately preceding the filing of his petition for final papers. By the act of June, 1906, this court is given jurisdiction, on the application of the District Attorney, to inquire into the naturalization proceedings of any court having jurisdiction of the subject-matter in any specific instance, with a view of canceling the certificate if it should appear to this court that such certificate had "been fraudulently or illegally procured." Such an inquiry is the one now entertained by the court, and the concrete question is whether one who has, of his own choice, been continuously without the United States for nearly half of the 5-year period may be said to have "resided continuously" within the United States during that period. In our judgment the question practically answers itself, and we feel that if there were any doubt upon the matter, that doubt should be resolved in favor of the government, both on principle and because of the authority of United States v. Cantini, 212 Fed. 925, 129 C. C. A. 445. The laws of the United States offer very fair and reasonable terms of admission to citizenship. No one ought to be heard to say that Congress imposed too long

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a time for an apprenticeship by fixing a 5-year period of continuous residence in which the applicant might get into the atmosphere of our institutions and acquire or absorb characteristics valuable to our community. Fixing a period of probation is undoubtedly to secure some measure of preparation for the duties incumbent on a citizen. That is clearly the spirit of the requirement as gathered from other provisions of the naturalization statute, which require a showing of certain proficiency in the use of our language and in the knowledge of our institutions. Of course, we agree with other courts that the words "resided continuously" must not be taken with exact literalness. . There should be no interpretation that would cause any temporary interruption of a social or business character to be fatal to the applicant's right to a certificate. But the line must be drawn somewhere. If the applicant chooses to leave the United States during the 5-year period, it is for him to see that that breaking of the exact continuity of his residence here is not carried to such an extreme as to substantially interrupt the influences of American residence in the formation of his character as an American citizen. As was said in the Cantini Case, whether he continuously resided in this country or not is a question of fact which is not determinable altogether by the applicant's insistence as to what his intention was during his absence. Both the character and extent of that absence are factors which may have greater potency than any evidence of the applicant's mental attitude occupied at the time he departed from this country or during his absence, whether testified to by himself or any one else. We are clear that a line must be drawn against any continuous absence abroad which substantially interrupts the continuity of residence in this country. If it may be said that one may depart from this country on a visit, after leaving assurances with his friends and employers that he intends to come back, and remain continuously absent of his own choice for a period of 2 years and 5 months and still be considered to have been continuously a resident of the United States for a period of 5 years covering that absence, we see no legitimate reason why he could not have stayed away 3 years or 4 years under the same circumstances without losing his right to naturalization.

[3] The terms "domicile" and "residence" have sometimes the same meaning and often distinctive significations. Often neither is considered to involve the matter of bodily presence. It is unprofitable to discuss the numerous authorities from which but one clear rule is to be deduced, namely, that the particular meaning of either is to be broadened or narrowed to give reasonable effect to the purpose and spirit of the act in which it is used. In the statute under consideration here, looking to the evident function of the requirement of a definite period of residence, we feel that the word "resided" has the meaning of "lived"; that the applicant must be seen to have been a "resident" in the sense of "inhabitant" of, and bodily present in the United States continuously for 5 years immediately preceding application for final papers. Such an interpretation affords opportunity for departures and limited absences from the country for social or business reasons, while at the same time leaving none for a substantial interruption of

that continuity of inhabitancy necessary to secure the effect of the provision. If, on the other hand, we allow the expression to have a constructive signification; if we may say that an applicant has, constructively, "resided continuously" within the United States for the defined period, when, in fact, a substantial portion of that time has been continuously spent abroad, although the absence is accompanied by a continued and fixed intention to return at an indefinite period for permanent residence in the United States, the court so interpreting the meaning of the expression is clearly thwarting the only purpose in providing a probationary period which we are able to see was in the mind of Congress.

Cantini's Case was under circumstances almost parallel with those of the case at bar. Like Griminger, he went back to the old country to visit, fell in love with a girl there, married her, and had a child born to him. The only substantial difference between the two sets of circumstances is that Cantini got back to the United States in less than 2 years or about 6 months sooner than did Griminger. The Third Circuit Court of Appeals held, as a question of fact, applying these circumstances, that Cantini had not resided continuously in the United States for 5 years prior to his application. We feel that this decision should be followed. If that decision is right, of course Griminger's Case is less entitled to a different conclusion.

[4] It is urged that it is only in cases where a certificate was fraudulently or illegally procured that this court has power to cancel it, and that neither element obtained in this case, because the state court possessed all the facts. Griminger's certificate was not fraudulently procured, because he frankly told the court the circumstances. Was it illegally procured? The requisite of 5 years' continuous residence is jurisdictional. If it were not proven, the certificate could not be said to have been legally procured.

[5] It is also urged that the court of common pleas had exclusive jurisdiction of this case, that its judgment is not reviewable, and that that judgment is entitled to full faith and credit. The act of 1906 under which this application for cancellation is brought has been held by the Supreme Court of the United States to be constitutional. Its purpose and its terms are broad enough to give this court jurisdiction to review, in a proper case, the circumstances attending naturalization in any court having jurisdiction of the subject-matter. The jurisdiction of the court of common pleas to hear the application at all is by favor of the legislation which gave this court the right to inquire into its action through cancellation proceedings. In Cantini's Case, as heard by the District Court, 199 Fed. 857, on page 858, Judge Orr discusses the relationship which the court entered for cancellation purposes sustains to the court whose certificate is under question, and finds that the doctrine of finality which ordinarily would protect the judgment of the court of common pleas does not apply in face of the act of 1906. It is not necessary for us to determine whether we sit as a reviewing court, a court of error or appeal. It is sufficient to note that Congress, which conferred jurisdiction upon the state court, lim-

ited the finality of that jurisdiction by a provision which authorizes this court to entertain cancellation proceedings.

Our conclusion is that the demurrer to the petition should be overruled.