## In re REICHENBURG.

(District Court, M. D. Pennsylvania. January 29, 1917.)

1. ALIENS ⊚⟷62—NATURALIZATION—CONTINUOUS RESIDENCE—TEMPORARY ABSENCE.

That an alien, after establishing a residence in the country, is temporarily absent on business trips as a traveling salesman, does not prevent his residence being continuous, necessary, under Act June 29, 1906, c. 3592, § 4, subd. 4, 34 Stat. 598 (Comp. St. 1913, § 4352), for naturalization.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125; Dec. Dig. ⊚⟷62.]

2. ALIENS ⊚⟷68—NATURALIZATION—WITNESSES.

The knowledge of witnesses to show continuous residence in the country for five years of an applicant for naturalization, need be only appropriate to the possibilities of the case, and it is enough that they usually saw him on his return from business trips abroad, and often while at home with his family, and corresponded with him, and visited and had personal knowledge of his life and habits during all the period.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ⊚⟷68.]

In the matter of the application of Frank Reichenburg for admission to United States citizenship. Certificate allowed.

Paul G. Smith, of Harrisburg, Pa., for applicant.

Thos. B. Shoemaker, of Philadelphia, Pa., for the United States.

WITMER, District Judge. The applicant, Frank Reichenburg, a native of Germany, came to the United States from Mexico March 23, 1903, and resided for a time at Chattanooga, Tenn. Afterwards he came to York, Pa., and, residing there for a short interval, he came to Harrisburg. In his testimony he says:

"I lived in Harrisburg, Pa., and made that city my home from the spring of 1904 to July, 1907; then I moved to Philadelphia, renting a house and living at Fifty-Seventh street and Whitby avenue until January, 1910; then I changed my residence to No. 436 North street, Harrisburg, Pa., which city has been my residence and home ever since. At the present time I am living with my wife and two children at 1352 State street."

The applicant has, during all of this time, until recently, been in the employ of the Fredbrenner Lumber Company, of Cincinnati, Ohio, with offices at Alexandria, La., as traveling salesman, selling lumber in the United States and Europe. Concerning his travels, he says:

"In December, 1907, I was sent abroad by my firm to sell lumber in Europe. I returned from said business trip on or about April, 1908. From April, 1908, until December, 1912, at various times I was sent by my firm on business trips to Europe, always, returning to my legal residence in America after my business in Europe was completed. From December, 1912, until April, 1913, I was traveling for my employers in the United States. On or about April 1, 1913, I was sent by my firm to Europe on a business trip. On or about October, 1914, having finished my business in Europe, and being in Paris, France, I endeavored to get passage home, but on account of the outbreak of the European war the French authorities would not allow me to sail. Although making every effort to get back, and calling upon the United States

Ambassador for the purpose of securing permission to come home, it was not until on or about June 16, 1915, that I was able to get back to the United States."

Since then he has been away from Harrisburg at short intervals. The two witnesses produced by the applicant testified that they have known him for more than nine years; that they were personal friends of the applicant and his wife; that they visited and saw each other frequently; that applicant's wife taught French to the children of one of the witnesses, Mr. Kitner; that the other witness, Mrs. Hardy, lived in the same house with the applicant and wife for over five years; that they saw or talked to applicant every time he came from his business trips. These witnesses also corroborated applicant as to the facts of his residence, and further testified as to his good moral character and attachment to the principles of the Constitution.

The Officer of the Naturalization Bureau opposes the granting of the citizenship on the ground that under the statute applicable thereto: ·

"The applicant has not established a residence for naturalization purposes, and that the witnesses produced by the applicant do not satisfy the statute as to facts of residence."

The moral character and other necessary qualifications of the applicant are not disputed.

[1] The statute provides that:

"It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the State or Territory where such court is at the time held one year at least." Comp. St. 1913, § 4352.

The matter in dispute here has to do with the character of the applicant's residence in the United States, whether under the facts as developed by his witnesses and his own testimony, coupled with his conduct under the circumstances of his employment during the five years preceding his application, he has resided continuously within the United States five years at least.

As contended by the government, it may be conceded that residence does not always depend upon the party's expressed intention, yet it will not be gainsaid that it largely depends upon such, and as gathered from his acts and demeanor, attending his abiding in whatever place that may be. "The transient visit of a person for a time at a place does not make him a resident while there; something more is necessary to entitle him to that character. There must be settled, fixed abode, an intention to remain permanently at least for a time, for business or other purposes, to constitute a residence within the legal meaning of that term. Penfield v. Chesapeake Co., 134 U. S. 357, 10 Sup. Ct. 566, 33 L. Ed. 940.

That the applicant had a residence here, under the showing made is easily determined in his favor, but was such residence continuous, or was it interrupted by his going away on his employer's business to Europe? Now, if the matter of residence cannot be predicated on a transient visit, or anything short of settled, fixed abode, an intention to remain permanently, surely by the same principle it cannot be lost to

him who goes abroad, like the applicant went on the business of his employer, returning from time to time as his business was transacted and his mission was concluded. Judged by whatever standard that may be applied, the only logical conclusion to be drawn for the conduct of the applicant, as disclosed by the record in this case, is that he resided continuously within the United States within the meaning of the statute.

Courts have repeatedly construed the meaning of the term "resided continuously" and have uniformly held that the term is not used literally as requiring the applicant to remain at all times physically within the jurisdiction, but that the term applies to changes of "domicile" only. Thus, in Re Schneider (C. C.) 164 Fed. 335, 336, Ward, J., said:

"The word 'continuously,' which is not found in the act of 1802, cannot be construed literally; else a resident of New York would lose his right if he paid a visit to Europe at any time during the first four years of his residence, or spent a day in Jersey City within the year immediately preceding the day of filing his petition. The use of the word may be to prevent any intermediate change of domicile during the five years. If Congress had meant that the alien must remain actually within the territory of the United States uninterruptedly during the five years, it would have used language like that of Act March 3, 1813, c. 42, § 12, 2 Stat. 811 [Comp. St. 1913, § 4360]: 'For the continued term of five years next preceding his admission as aforesaid have resided within the United States without being at any time during the said five years out of the territory of the United States.'"

The same construction is quoted with approval and followed in United States v. Rockteschell, 208 Fed. 530, 125 C. C. A. 532. In both the Schneider and the Rockteschell Cases the question was whether a sailor, after acquiring a residence or domicile in this country, abandoned the same by following his occupation and going to sea, or whether he still "resided continuously," within the meaning of the act, at his old domicile, although absent practically the whole of the five-year period on voyages.

In the Schneider Case the applicant arrived at New York from Liverpool on November 1, 1902, and took up his residence there. Subsequently he enlisted in the Navy, and while in said service took out his first papers December 26, 1905. He filed his petition for a certificate of citizenship June 3, 1908. He produced an honorable discharge for four years' service in the Navy. During this space of four years he was only home several times for brief periods on shore leave.

In the Rockteschell Case, which was a question of cancellation of certificate, the respondent only returned to his domicile at irregular intervals and for comparatively short periods of time. Here the court, after following the same line of reasoning as in the Schneider Case, further on page 533 of 208 Fed. (125 C. C. A. 332) said:

"To establish a residence there must doubtless be a concurrence of act and intent; but, when once established, temporary absences from time to time, unaccompanied by an intent to abandon or change the residence, do not operate to interrupt the continuity thereof. There is nothing in the naturalization act, other than the phrase itself, 'has resided continuously within the United States,' to indicate a purpose upon the part of Congress to require continuous physical presence, and in the practical administration of the law such a construction would entail consequences harsh in the extreme. Within reasonable limits, therefore, it is a question of fact, to be determined in the

light of all the attendant circumstances of each particular case, whether the continuity of residence has been broken by temporary absences."

Among other cases cited by counsel for the applicant, the following are in support of the conclusion reached: In re Timourian (D. C.) 225 Fed. 570; In re Deans (D. C.) 208 Fed. 1018; United States v. Cantini (D. C.) 199 Fed. 857; In re Cantini, 212 Fed. 925, 129 C. C. A. 445.

[2] As to the sufficiency of the witnesses produced by the applicant it may be said that their knowledge need only be appropriate to the possibilities of the case. Both witnesses have testified that they usually saw the applicant upon his return from his trips abroad, and often while at home with his wife and family; that they corresponded with him, visited, and had personal knowledge of his life and habits during all of the five year period. This is all that, under the circumstances of the case, should be required and more could hardly be expected. In the Schneider Case, supra, where the applicant was absent the greater part of the five-year period, returning very seldom, and then only for a short period of time on leave of absence, the court said:

"It cannot be that the witnesses must see the applicant every day and every minute of every day for five years. Their knowledge must be appropriate to the applicant's employment. In the case of a sailor, if they know that he lived here before he went to sea, while at sea returned from time to time at the termination of his voyages, and corresponded with him, they know all that in the nature of his employment a sailor can supply."

The objections raised against the application are overruled, and the certificate of citizenship is allowed.

---

⊜➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes