## UNITED STATES v. WURSTERBARTH.

### (District Court, D. New Jersey. May 13, 1918.)

1. ALIENS ⏭71½, New, vol. 7 Key-No. Series—NATURALIZATION—CANCELLATION OF CERTIFICATE OF CITIZENSHIP.

Where respondent, a native of Germany, was admitted to citizenship under Rev. St. § 2165, requiring an applicant for admission to make oath that he will support the Constitution of the United States, and that he absolutely abjures and renounces all allegiance to any foreign prince or sovereignty, proof that, when the United States and Germany engaged in war, many years later, respondent desired a German success, and recognized an allegiance to Germany superior to that due the United States, unexplained warrants cancellation of his certificate of citizenship, on the ground that it was procured by fraud, in that his oath to renounce allegiance to any foreign sovereignty was false, and excepted the land of his nativity.

2. ALIENS ⏭62, 71½, New, vol. 7 Key-No. Series—NATURALIZATION—GOOD FAITH.

Public policy requires that no one should be naturalized, except he exercise the utmost good faith in all of the essentials required of him, and where the government, in a proceeding to cancel a certificate of citizenship, has shown that good faith in any of the essentials is highly questionable, the burden is on the respondent to dispel the doubt.

3. EVIDENCE ⏭75—UNCONTROVERTED EVIDENCE.

Where respondent failed to deny testimony as to his remarks, such testimony may be accepted as true, though witnesses thereto testified from their unaided recollection.

In Equity. Petition by the United States to cancel the certificate of citizenship of Frederick W. Wursterbarth. Certificate canceled.

Charles F. Lynch, U. S. Atty., of Newark, N. J., for the United States.

Carl Lentz, of Newark, N. J., for respondent.

HAIGHT, District Judge. This is a proceeding instituted by the United States attorney for this district under section 15 of the Naturalization Act of June 29, 1906 (34 Stat. L. 596, 601, c. 3592 [Comp. St. 1916, § 4374]), to cancel a certificate of citizenship granted to Frederick W. Wursterbarth, the respondent, by the court of common pleas of the county of Passaic, in the state of New Jersey, on the ground that it was fraudulently and illegally procured. The certificate was issued on November 3, 1882; the respondent being a native of Germany and a subject of the German emperor. The fraud alleged is that the respondent declared under oath that he absolutely and entirely renounced and abjured all allegiance and fidelity to any foreign sovereignty, and particularly to the emperor of Germany, whereas in fact he did not do so, but, on the contrary, retained an allegiance to Germany and its ruler. The matter has come on for hearing on the issues raised by the petition of the district attorney (to which were attached affidavits supporting its allegations), and the answer of the

⏭For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

respondent. Upon the hearing the government proved, in substance, the followng facts, viz.:

Within a few days after the outbreak of the present war between the United States and the German Empire, the respondent was approached by two ladies interested in a local chapter of the American Red Cross, in an effort to induce him to contribute money to that organization, upon which appeal the respondent became angry, and replied in substance that he would not do so; that he would do nothing to injure the country in which he had been born, brought up, and educated. Subsequently, in the month of June following, another woman, who was likewise interested in the same chapter of the American Red Cross, visited him, and asked him to become a member. He angrily refused to do so, stating that he would give no money to send soldiers to the country where he was born and educated, and, in reply to some arguments which the solicitor advanced, stated that she did not know what it meant to be born in a country, and then have men go over and fight against that country. In the month of November, 1917, the respondent was approached by two gentlemen, in an effort to induce him to subscribe to the fund which the Young Men's Christian Association was then raising for war work. At that time he stated that he would do nothing to help defeat Germany, and in response to a question as to whether he did not want America to win the war he replied that he did not; that he had relatives in Germany. He made the same rejoinder to the question as to whether he did not want the American soldiers in camps and cantonments to be well taken care of; and, in reply to a statement made to him that he was better off than most Americans, he replied that he only came to this country on a vacation or visit.

[1] The respondent did not attempt to refute or explain any of that testimony. It thus appears, without contradiction, that the respondent, although a citizen of this country, on three separate occasions (several months having intervened between each), since the outbreak of the war with Germany, gave vent to expressions which clearly indicate that at this time he bears an allegiance to the country of his origin, superior to that which he recognizes to this country. While his present state of mind is, of course, not the main fact in issue, yet if, at the time the certificate of citizenship was granted to him he retained the same allegiance to Germany, as he now manifestly has, it is not contended, and, indeed, it would not seem to be debatable, that any other conclusion could be reached than that the certificate had been procured by fraud, because the provisions of the Naturalization Act, at the time the respondent's certificate was issued (section 2165 of the Revised Statutes), required that before he could be admitted to citizenship he should declare on oath that he would support the Constitution of the United States, and that he absolutely and entirely renounced and abjured all allegiance and fidelity to any foreign sovereignty.

The question, therefore, on which the decision of this case depends, is whether it may be legitimately inferred as a fact, from his present

state of mind, coupled with the circumstances to be hereinafter referred to, that he was of the same mind at the time he took the oath of allegiance and renunciation. In that aspect the case is one of first impression, so far as I am informed or have been able to ascertain. It must be borne in mind that the respondent did not express any dissatisfaction with the aims and purposes of this country in the present war, or with the reasons which had induced Congress to declare war, but that he boldly took the position that he would do nothing to injure the country of his birth, and did not wish this country to win the present war, because of the ties which bound him to Germany. As the years succeeding his naturalization passed, coupled with the fact that he continued to dwell in our midst, associate with our citizens, receive the benefits which this nation and its institutions have conferred upon him, acquire property here, and hold public office (as the proofs show that he did), it is natural to presume that his affection and feeling of loyalty and allegiance to this country would increase, and that any ties which bound him to the country from which he came would correspondingly decrease.

If, therefore, under such circumstances, after 35 years, he now recognizes an allegiance to the sovereignty of his origin, superior to his allegiance to this country, it seems to me that it is not only permissible to infer from that fact, but that the conclusion is irresistible, that at the time he took the oath of renunciation, he did so with a mental reservation as to the country of his birth, and retained towards that country an allegiance which the laws of this country required him to renounce before he could become one of its citizens. Indeed, for the reasons just stated, his allegiance to the former must at that time have been stronger than it is at present. Whatever presumption might otherwise arise in his favor from the apparent fact that during the intervening years he has lived as a good citizen of this country is of no weight, when it is considered that nothing has happened during that time to call forth a manifestation of his reserved allegiance, and that as soon as something did happen—i. e., the war between this country and Germany—he immediately manifested it.

It is argued that it is not legitimate to presume that his mental attitude to-day is the same as it was 35 years ago, because as a general rule presumptions do not "run backwards." I will readily concede that proposition. However, without attempting to differentiate, if indeed there is any real distinction, between a strictly legal presumption of fact, which constitutes at least prima facie proof of a matter in controversy, and the probative value of one circumstance in establishing another fact, there are many cases in which it is permissible to infer the existence of one fact from proof of subsequent facts. If the natural and probable inference to be drawn from a proven fact is the existence of another fact, it makes no difference whether the latter fact be before or after, in point of time, the fact from which the inference is to be drawn. The decisive point is whether the inference is a natural and probable one. That principle is recognized by all the authorities, and is supported by every consideration of reason.

It will be sufficient, I think, to refer to the remarks of the Supreme Court in Luria v. United States, 231 U. S. 9, 27, 34 Sup. Ct. 10, 58 L. Ed. 101, where this very section of the Naturalization Act was under consideration, and Ellis v. State, 138 Wis. 513, 119 N. W. 1110, 20 L. R. A. (N. S.) 444, 131 Am. St. Rep. 1022, a case relied upon by counsel for the respondent.

So the mere fact that it would not be permissible to find one's state of mind at a given time, from what he said or did at a subsequent time, under a certain set of circumstances, would by no means justify the conclusion that in all cases and under all circumstances the same rule must be applied. For instance, if this respondent had been naturalized in the month of March, 1917, and had expressed himself in April, June, and November of the same year, as the proofs in this case show that he did, it could scarcely be doubted that he had reserved an allegiance to the country of his origin at the time that he took the oath of renunciation in the naturalization proceedings; yet in such a case it would be necessary to find his state of mind at that time from his subsequent state of mind, as manifested by what he said. Many similar examples might be cited. The state of the respondent's mind at the time he was naturalized is, of course, a question of fact. If, instead of making the remarks which are relied upon by the government in this proceeding, he had then frankly stated that, at the time he received his certificate of naturalization, he reserved an allegiance to Germany, it could not be questioned that he had procured his certificate through fraud. The only difference between such a case and that actually presented is in the manner in which his state of mind thirty-five years ago is to be proved. In the one case the proof would be direct; in the other, it would rest on inference.

Moreover, allegiance to a country is necessarily, I think, in a class by itself; and to argue that, because it would not be permissible to infer one's previous state of mind on one subject from subsequent acts and deeds, it is also not permissible to do so in respect to one's state of mind regarding allegiance to a country would lead to illogical results. While, undoubtedly, it would not be permissible to infer that a man did not love his wife when he married her, from mere statements made 25 years after which showed that he did not then love her, it by no means follows that it is not natural and proper to infer in cases such as this, from a subsequently expressed allegiance to the country of his birth, that one did not renounce allegiance to that country when he was naturalized. If the respondent's present state of mind was different from what it was when he was naturalized, or if the expressions which he used did not properly express his feeling, an opportunity was afforded him to have so demonstrated. He did not attempt to explain or deny; his attitude was rather one of defiance.

In a case such as this, especially in the absence of explanation or denial, I am of the opinion that, if there were any doubt about the matter, it should be resolved in favor of the government. Such was the opinion of Judge Killits in a case (United States v. Griminger [D. C.] 236 Fed. 285) instituted under the same section of the Natural-

ization Act as this is, where the question was whether a person had "resided continuously" within the United States during the period required by the statute, which question the Circuit Court of Appeals of this circuit, in *United States* v. *Cantini,* 212 Fed. 925, 129 C. C. A. 445, has held to be one of fact.

[2] Public policy requires that no one should be naturalized, except he exercise the utmost good faith in all of the essentials required of him, and where the government has shown that good faith in any of the essentials is highly questionable, the burden should be cast on the respondent to dispel the doubt. He, as no one else, has the means of doing so.

[3] Whatever force there might have been in the argument of counsel for the respondent that, as the witnesses in this case were testifying from unaided recollection, their statements should be scrutinized with great care and hesitatingly accepted, is lost, because the defendant has not denied them. I accept them as true. The witnesses impressed me as conscientious and patriotic citizens, who were endeavoring to tell the truth, and who, in reporting the respondent's disloyal statements, were doing their duty.

It follows, therefore, that the prayer of the petition should be granted. A decree will accordingly be entered, setting aside and canceling the respondent's certificate of citizenship.