### UNITED STATES v. DICK.

(District Court, N. D. New York. July 23, 1923.)

1. Aliens ⬳62—Continuous physical presence not essential to residence of applicant for citizenship; "resided continuously."

The provision of Rev. St. § 2170 (Comp. St. § 4360), requiring continuous residence for the five years next preceding admission to citizenship, does not mean that the alien must be actually and physically within the United States every day of that period.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Resided Continuously.]

2. Aliens ⬳62—Temporary absences do not destroy continuity of residence of applicant for citizenship.

Absences of an alien from the United States during the five years preceding his application for citizenship, even for considerable periods, do not destroy the continuity of his residence, if consistent with an intention to retain such residence.

3. Aliens ⬳62—Respondent held eligible, and petition for cancellation of certificate of citizenship for insufficient residence denied.

Respondent came from Scotland to the United States while a minor with his parents, who established a home which is still retained. Re-

spondent entered the employment of a local concern, where, except for two years at college, he has since remained. After two years he was sent by his employer to points in South America in charge of its business there. He remained unmarried, established no other home, and contributed to the support of the home here, to which he returned as often as business permitted. *Held*, that he was eligible to citizenship and that a certificate of citizenship granted to him would not be canceled on the ground of nonresidence.

Petition by the United States against Archibald Hastie Dick for cancellation of certificate of citizenship. Petition denied.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y., and Benjamin C. Mead, First Asst. U. S. Atty., of Auburn, N. Y.

Strong & Golden, of Schenectady, N. Y. (Marvin H. Strong, of Schenectady, N. Y., of counsel), for respondent.

COOPER, District Judge. The respondent was admitted to citizenship on the 7th day of February, 1922, and this proceeding is brought to cancel the certificate of citizenship on the ground that it was illegally obtained. The matter was submitted to this court upon an agreed state of facts. The essential facts thus established are:

That the respondent was born in Glasgow, Scotland, on April 16, 1887, and at the age of 16 came with his parents to the United States, arriving in the city of New York about October 1, 1903; that respondent and his parents went directly to Schenectady, N. Y., and established a home there; that on the 13th day of October, 1903, Dick entered the employ of the American Locomotive Company, at Schenectady, N. Y., and has since been continuously in the employ of said company, except between September, 1911, and July, 1913, when he was a student at Union College; that in July, 1913, he was sent by the company to the office of its sales agents in Santiago, Chile. In January, 1915, he was transferred from Santiago to Buenos Aires, and later to Rio De Janerio, where he has since been located in charge of the office of the American Locomotive Sales Corporation, a subsidiary of the American Locomotive Company. That the duties of respondent, while so employed, necessitated frequent trips to other parts of South America, as well as trips to Europe and the United States; that during all the time mentioned respondent's father resided in Schenectady, and his mother resided in Schenectady until her death in December, 1921, and that she was buried at Schenectady; that during all the time that respondent was away from home in the foreign service of the American Locomotive Company he contributed more than one-half of the expenses of maintaining the family home in Schenectady; that he never married or purchased a residence in any foreign country; that he has returned to his home in Schenectady as often as business affairs would permit him; that on the 5th day of November, 1921, respondent filed in the Supreme Court of the state of New York, Schenectady county, a petition to be admitted as a citizen of the United States, and on the 7th day of February, 1922, after a hearing in open court, the objections of the examiner that the respondent was not entitled to citizenship being duly considered and

overruled, respondent was admitted as a citizen of the United States, and a certificate of naturalization in due form was issued to him.

The government has now brought this proceeding to cancel Dick's certificate of citizenship, contending Dick had not continuously resided within the United States for five years immediately preceding his admission, as required by the naturalization statute. The section applicable reads as follows:

"No alien shall be admitted to become a citizen who has not for the continued term of five years next preceding his admission resided within the United States." Rev. St. § 2170 (Comp. St. § 4360).

[1] It has been established by a long line of authorities that Congress did not mean by this enactment that an alien must be actually and physically within the United States for every day of the five-year period. In re Schneider (C. C.) 164 Fed. 335; U. S. v. Cantini (D. C.) 199 Fed. 857; Id., 212 Fed. 926, 129 C. C. A. 445; In re Deans (D. C.) 208 Fed. 1018; Id., 230 Fed. 958, 145 C. C. A. 151; In re Rockteschell, 208 Fed. 530, 125 C. C. A. 532; In re Timourian (D. C.) 225 Fed. 571; U. S. v. Shanahan (D. C.) 232 Fed. 169; U. S. v. Griminger (D. C.) 236 Fed. 285; U. S. v. Jorgenson (D. C.) 241 Fed. 413, 415.

[2] It is also established that physical absences from the country, even for considerable periods, do not as a matter of law destroy the continuous character of the residence, within the meaning of the statute, if such absences are consistent only with an intention to retain a residence in this country and to return thereto, which intention must remain throughout such absence or absences. In U. S. v. Mulvey, 232 Fed. 513, 516, 146 C. C. A. 471, 474, Judge Rogers, writing for the Circuit Court of Appeals in the Second Circuit, says:

"If an alien departs from the United States with no intention of returning, he may by that act lose his residence in this country, so that if, after a time, he again changes his mind and returns to this country, the continuous character of his previous residence has been fatally destroyed, and the five year period of continuous residence will date from his return. If, however. he departs for a temporary purpose, and with an intention of returning, which exists during the whole period of his absence, and at length does return, then the question whether his absence has put an end to the continuous character of his residence is one which the court must determine according to the facts of the case."

In U. S. v. Jorgenson (D. C.) 241 Fed. 413, 415, the court said:

"The intention of an alien as to his residence or domicile, once established, is a most important, and usually a controlling, factor in determining his right to citizenship. The adoption by the courts of a fixed rule as to the time of absence from the United States which, in every case, shall bar an alien from admission to citizenship, would be both inconsistent and illogical, and would constitute forbidden judicial legislation. An absence of a single day accompanied by an actual intention to change or abandon residence would be fatal, while an absence of one or more years with a continuing and fixed intention to return and to maintain meanwhile a previously established residence might not be a bar to the granting of citizenship. The question of intention is always one of fact to be determined from both actions and declarations, and ofttimes conduct is more persuasive than words."

[3] Tested by this standard of intention, can there be any reasonable doubt that the respondent established a residence at Schenectady, N. Y., upon his arrival with his parents in 1903, and has maintained and intended to maintain a residence there, and has resided in Schenectady from that time to this day, within the meaning of the statute? His parents resided in Schenectady from their arrival in America until the death of the mother in 1921, and the father still resides there. The respondent had no other home than that of his parents during the 20 years since his arrival in America. When he left the country it was on business for his employer. He never married while absent, or established a home abroad in any legal sense. He has contributed continuously to the maintenance of the family home in Schenectady during his absence in South America on his employer's business. His entire conduct, both in word and in deed, are consistent only with an intention to retain a residence in Schenectady, N. Y. There is no single thing inconsistent therewith. If he did not reside at Schenectady, N. Y., where else can he be said to have had a residence? Certainly not in Glasgow, since he has never been there since he left in 1903, and has no family, household goods, or other possessions there.

In similar cases the courts have refused to cancel the certificates of citizenship. In Re Reichenburg (D. C.) 238 Fed. 859, the applicant for citizenship was a native of Germany. He came to the United States from Mexico in 1903, and was employed as a traveling salesman by the Cincinnati Lumber Company, selling lumber in the United States and England. In December, 1907, he went to Europe, staying six months. From April, 1908, to December, 1912, he made various business trips to Europe. In April, 1913, he went abroad, and endeavored to come back in the fall of 1914, but because of the war, was unable to get a passport, and did not return until June, 1915. Judge Witmer, in deciding this case, said:

"Judging by whatever standard that may be applied, the only logical conclusion to be drawn from the conduct of the applicant, as disclosed by the record in this case, is that he resided continuously within the United States within the meaning of the statute."

In U. S. v. Jorgenson, supra, the applicant came to the United States in 1900, and in 1909 entered the employ of the Isthmian Canal Commission, and left for Panama, and was there over three years; his wife residing with him. He was admitted to citizenship in 1915, and proceedings for revocation of the citizenship were instituted in 1916. The District Court denied the petition of the government for revocation of citizenship, saying:

"His actions show conclusively that during the entire time of his stay in the Canal Zone, his fixed intention and purpose was to maintain his residence in the state of New Jersey and to become a citizen of the United States."

In the cases of In re Schneider (C. C.) 164 Fed. 335, and In re Rockteschell, 208 Fed. 530, 125 C. C. A. 532, the alien applicants in each instance were sailors; in the former case in the United States navy, and in the latter case on commercial vessels. Though both respondents were absent from the country the greater part of the time, from the time of their arrival in the United States until the date of

their admission to citizenship, nevertheless the court denied the petition for cancellation of the certificate of naturalization upon the ground that, on the facts in those cases, both aliens had resided continuously within the United States for the period of five years before the date of their admission, within the meaning of the statute.

The cases of the contrary cited in the government's brief are clearly distinguishable from the case at bar. In U. S. v. Mulvey, 232 Fed. 513, 516, 146 C. C. A. 471, the alien came from Ireland to the United States in 1908, and on July 18, 1912, he returned to his former home in Ireland, because of news of his mother's illness. After he arrived in Ireland, his mother wanted him to remain with her for a time, and this he did, and it was not until September 19, 1914, that he left Ireland, and reached the United States September 27, 1914, and applied for his naturalization papers on September 28, 1914. The court held in substance that he had resided so short a time in the United States that he could not have sufficiently familiarized himself with our institutions and mode of government as to come within the spirit of the provision requiring five years' continuous residence.

In U. S. v. Cantini (D. C.) 199 Fed. 857, and 212 Fed. 926, 129 C. C. A. 445, the respondent came to this country from Italy, and after being here a number of years returned to his native country to visit his parents for three months. His stay was prolonged, and he remained in Italy for two years, during which time he married, and a son was born. In a few months thereafter he came again to the United States. The appellate court held that the facts did not establish a continuous residence on the part of Cantini within the meaning of the statute. While the court did not expressly say that the alien had abandoned his residence in the United States, that is the necessary inference from the opinion.

In U. S. v. Griminger (D. C.) 236 Fed. 285, the respondent, after coming to this country, went back to Austria, stayed for 2½ years, and was married abroad, where a child was born to him. The court there very properly held that his residence was not continuous, and was not consistent with an intention to retain a residence in the United States.

In U. S. v. Ginsberg (D. C.) 244 Fed. 209; Id., 247 Fed. 1006, 159 C. C. A. 665; Id., 243 U. S. 472, 37 Sup. Ct. 422, 61 L. Ed. 853, the alien had never established a legal residence in the state of Missouri, where he was admitted to citizenship in 1912, but for many years immediately prior to his admission was a continuous resident of Brazil, where he had married and had a family. The District Court, while holding that Ginsberg should not have been admitted to citizenship, nevertheless dismissed the petition, in order that the law applicable to procedure in such cases might be settled.

In re Vasicek (D. C.) 271 Fed. 326, has no analogy to the case at bar.

It will be noted that in none of the cases in which the courts have held that the alien was not entitled to citizenship, or that his citizenship certificate should be canceled, was the alien absent from the country exclusively upon business for a resident employer, while maintaining his home in the United States. In all of the cited cases holding

against the alien, he returned to his family in the country of his nativity, or in which his family resided, and remained there for a longer period of time than consistent with a mere temporary visit to family or friends. The return to and the remaining in the country of the nativity, for other than business purposes, was so prolonged, and accompanied with such other circumstances such as marriage abroad, as to be inconsistent with a continuous intention to maintain a residence in and to return to the United States.

No such inconsistent attitude can possibly be drawn from the facts in this case. As far as appears by the agreed facts, the respondent here never returned to the city or the country of his nativity. He never went outside of the United States for any purpose other than to carry out the directions of his employer in the United States, in the conduct of its business in foreign lands.

To find against the respondent here, who has been continuously a resident of Schenectady, and was continuously physically present therein, from 1906 to 1913, during which time he completed two years' work in Union College, a tribute to his superior intelligence, and who left the city and country only upon his employer's business, returning to his home in Schenectady, N. Y., as frequently as possible, would be to construe the statute as substantially requiring continuous physical presence within the country, as well as a continuous legal residence therein during the five-year period. The statute makes no such requirement.

In view of the foregoing conclusions, it is not necessary to pass on the questions raised by the respondent that the petition is insufficient upon its face, or that this proceeding will not lie in the absence of allegations that the certificate was procured through fraud.

The petition of the government is denied.