*Decision will be entered under Rule 50.*

ESTATE OF W. M. L. FISKE, DECEASED, CENTRAL HANOVER BANK AND TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102055. Promulgated April 23, 1941.

*Charles C. Parlin, Esq.*, and *John A. Reed, Esq.*, for the petitioner
*Gerald W. Brooks, Esq.*, for the respondent.

230

OPINION.

MURDOCK: Section 116 (a) of the Revenue Act of 1936 exempts from taxation, in the case of an individual citizen of the United States who is "a bona fide nonresident of the United States for more than six months during the taxable year", amounts received from sources without the United States which would constitute earned income, as defined in section 25 (a), if received from sources within the United States. Earned income is defined in section 25 (a) to include "compensation for personal services actually rendered." The petitioner contends that the decedent was a bona fide nonresident during all of the year 1936 and received the $37,400 as compensation for personal services actually rendered abroad.

The Commissioner contends that the facts in the present case fail to bring it within the provision of section 116 (a) in two respects—first, the decedent was not a bona fide nonresident of the United States for more than six months during the taxable year, and, second, the $37,400 which he received was not "compensation for personal services actually rendered." He argues that the only person who can qualify as "a bona fide nonresident of the United States for more

than six months during the taxable year" is one who has been physically absent from the United States for more than six months of the taxable year. He says, in this connection, that the establishment of an actual residence is unimportant, since one who has been physically absent from the United States for more than six months of the year would receive the benefit of the exemption whether or not he had a residence outside of the United States, and one who was physically present in the United States for six months of the year would not receive the benefits of the exemption even though he had an actual residence outside of the United States. He attempts to support this narrow construction of the statute by its legislative history and by Bureau rulings.

The words "residence" and "domicile" have never been satisfactorily defined for legal purposes. See generally on this subject Kennan on Residence and Domicile. Where the word "nonresident" is defined in dictionaries, the definitions given are not sufficiently discriminative for present purposes. Although residence and domicile are sometimes regarded as synonymous, there would seem to be a difference. Domicile is the broader term, since a man may have his domicile at one place and actually reside for the time being in another. *Bowring* v. *Bowers*, 24 Fed. (2d) 918; *Carstairs* v. *United States* (Dist. Ct., E. Dist. Pa., 1936, not officially reported); *J. P. Schumacher*, 32 B. T. A. 1242. The basic concept involved in the term "residence" is that of being seated or abiding in a place, while the predominant element in domicile is the intention of remaining. Thus, the distinction between residence and domicile seems to lie in the difference in degree of permanency contemplated. Residence is a variable and elastic term. Its meaning generally depends upon the context and the purpose of the statute in which it is used. The addition of the words "bona fide" to the term resident or nonresident would seem to imply that the intent of the person is of considerable importance. It might also prevent a person who has more than one residence from shifting importance to one or the other, as may suit his own interests.

Looking to the context and the purpose of the statute to discover the meaning of the phrase "bona fide nonresident of the United States for more than six months during the taxable year", we do not discover much that is helpful. This phrase appeared for the first time in section 213 (b) (14) of the Revenue Act of 1926. Paragraph 14 was one of a number of exclusions from income, but it bore no further relation to contiguous provisions. The purpose of the provision is not entirely clear. A statement was made during the hearings of the Ways and Means Committee urging the adoption of a provision which would "relieve American citizens resident in foreign countries and engaged there in the promotion of American foreign trade from

tax upon the income which they earn in the country of residence." See hearings before the Committee on Ways and Means on Revenue Revision, 1925, beginning p. 176. The House inserted language exempting salaries and commissions arising from the sale abroad of tangible personal property produced in the United States for export. This was said to be for the purpose of encouraging foreign trade. See Ways and Means Committee Report, 69th Cong., 1st sess., H. R. 1, p. 7. The Senate struck out this provision as unnecessary in view of the credit which a citizen would receive for income tax paid to a foreign country. See Senate Finance Committee Report, 69th Cong., 1st sess., S. R. 52, p. 20. Senator Smoot, in introducing a Senate amendment, later rejected, made some comments which are not helpful for present purposes. See Cong. Rec., vol. 67, beginning p. 3781. Quite different language from that originally used by the House was finally adopted in conference without comment, and that was the same language which has continued and which now forms section 116 (a) of the Revenue Act of 1936. Conference Report, 69th Cong., 1st sess., H. R. 356, p. 2. Comments in regard to this provision in later acts are no more helpful. Cf. 72d Cong., 1st sess., S. R. 665, p. 31; Cong. Rec., vol. 75, pp. 10410–11.

Does this legislative history indicate anything in regard to the purpose of the provision other than would appear from the words used in the provision itself? It indicates that Congress did not intend to limit the exemption to persons domiciled in foreign countries. See also S. M. 5446, C. B. V-1, p. 49. If the purpose of the provision was correctly stated in the hearings before the Ways and Means Committee, that is, to relieve American citizens residing and engaged in business in foreign countries from tax upon the income which they earned in the country of residence, then the salary in question would come within the purpose of the legislation, since the decedent was a citizen residing and engaged in business in a foreign country and the income was earned in the country of residence. The use of the words "bona fide nonresident" instead of a straightforward statement that mere physical presence in or absence from the United States would be determinative, is indication enough that Congress did not mean the exemption to depend upon mere physical presence in or absence from the United States during six months of the year.

The Bureau rulings are neither clear nor controlling on the question of what was meant by "bona fide nonresident." The exemption has been held applicable in the rulings, provided that the citizen was merely absent from the United States for more than six months during a taxable year, but it is quite another thing to say that it does not apply unless the person has been absent from the United States for more than six months during a taxable year. Physical absence

from the United States for the prescribed time would be a prerequisite in the case of a person who had no actual residence outside of the United States. However, a citizen who had an actual bona fide residence outside of the United States and no residence within the United States, has been held entitled to the exemption even though he was not physically absent from the United States for more than six months during the taxable year. *Carstairs* v. *United States*, *supra*. While decisions relating to the words "residence" and "nonresidence", as used in other statutes, are not particularly helpful, they do indicate that the test of mere physical presence or absence is not determinative. Cf. *Hall* v. *Godchaux*, 149 La. 733; 90 So. 145. *In re Conis*, 35 Fed. (2d) 960; *United States* v. *Dick*, 291 Fed. 420; *United States* v. *Rockteschell*, 208 Fed. 530; *United States* v. *Jorgenson*, 241 Fed. 412. The above cases, as well as many others, are authority for the proposition that a person may be an actual bona fide resident of a place and yet be absent from that place for one reason or another.

Regulations 94, article 211-2 defines a nonresident alien as a person who is not a citizen and whose residence is not within the United States. It holds that one who is a mere transient or sojourner is not a resident, and whether he is a transient is determined by his intentions with regard to the length and nature of his stay. One who comes to the United States for a purpose which will require an extended stay and to that end makes his home temporarily in the United States is a resident, although he may have the intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. This regulation was originally promulgated in substantially the same language under the Revenue Act of 1921, and the court in *Bowring* v. *Bowers, supra*, said that congressional approval of it made it binding on the courts. Aliens have been held to be residents of the United States for income tax purposes even though they have been absent from this country for all or a part of the taxable year. *Federico Stallforth*, 30 B. T. A. 546; affd., 77 Fed. (2d) 548; certiorari denied, 296 U. S. 606; *J. P. Schumacher, supra; L. E. L. Thomas*, 33 B. T. A. 725; *John Ernest Goldring*, 36 B. T. A. 779. An alien may be a nonresident of the United States even though he resides in this country a substantial part of the year. *Ingram* v. *Bowers*, 47 Fed. (2d) 925; affd., 57 Fed. (2d) 65. Congress probably intended the word "nonresident" to have the same meaning in section 116 (a) as it has in Supplement H, to which the above article applies. S. M. 5446, *supra*.

Thus, it seems proper to conclude that the question of whether the decedent was a nonresident depends not merely upon the period of time he spent in the United States, but depends also upon the

purpose of his visit, his intentions, and surrounding facts and circumstances. *Carstairs* v. *United States, supra.* The principal reasons for our conclusion that he was a resident of France, and, consequently, was a nonresident of the United States during all of the taxable year are briefly stated in this paragraph. He was not a mere visitor, transient, or temporary sojourner in France. He went there to live and to conduct the business of Dillon, Read & Co. for a long period of time. He had been there for more than ten years when he left in the latter part of 1935 for a short visit to the United States. He had an established place of abode or residence in France for a number of years before, during, and after 1936. Apparently he had an intention to return permanently to the United States eventually, but his departure in 1935 was not to carry out any such intention. On the contrary, his intention at that time was to continue to reside in France for a lengthy, if indefinite, period of years. He came to the United States in December 1935 purely as a visitor and temporary sojourner. He did not intend to take up residence in this country or to discontinue his residence in France. He left all of his personal belongings and household furnishings in France, with the exception of those personal belongings which he needed for the period of his visit. He had no household furnishings in this country and he acquired none. He intended to go back to France and use the household furnishings in his French residence. He had no permanent place of abode in this country and he did not intend to acquire any at any time during his visit. The furnished house in San Mateo was rented for a few months only to accommodate him during his visit. He was prevented by illness from returning to his residence in France, but he retained his intention to return there just as soon as his health would permit. Eventually, he did return and he continued to reside in France for several years. His business was in France, not here. The income was earned as a result of services performed outside the United States. The fact that he was actually physically present in the United States during the entire calendar year 1936 loses its importance in the face of his French connections, his intention to return to France, his lack of intent to establish any residence in the United States, the absence of any residence here, and the circumstances which prevented him from carrying out his intention to return to France.

The respondent argues further that the decedent was not a resident of France since the best evidence of his intention is contained in the statements which he made in applications for passports and in income tax returns to the effect that his residence, permanent residence, or legal residence, was in Chicago or in New York. The decedent never concealed the fact that he had been living for years in

Paris, but, on the contrary, disclosed that fact in the applications for passports. He was required in those applications to give an address in the United States which, for the purposes of the passport, would represent his permanent or legal residence. The address which he usually gave, which seemed to be satisfactory for the purpose, was an office building in Chicago. Clearly, he never resided there and had no intention to reside there. Even if such evidence be regarded as tending to show residence in the United States, still it is not as persuasive as that discussed in the preceding paragraph.

The respondent contends that the amount received by the decedent was not compensation for personal services actually rendered or performed because the decedent rendered no services during 1936. He says the amount was not a gift and he suggests that it might have been a distribution of profits. The amount was not a distribution of profits since the decedent held no stock in the company. Although the decedent was away from his place of business and was too ill to perform his duties during 1936, nevertheless, he had rendered services in the past, he was expected to continue to render services in the future, and his employer continued his salary during his illness. Cf. *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115. His place of employment was in France. He served the company only by rendering personal services. Apparently, the decedent had developed an office organization and a clientele for his employer so that the business could go on even in his absence. His employer wanted to hold him as an employee. It is difficult to draw any other conclusion from the fact that the employer paid him the $37,400 in 1936. The Commissioner has held that retired pay and pensions are earned income. Mim. 3283, C. B. IV-1, p. 14. We conclude that the amount in question was paid to the decedent as compensation for personal services actually rendered outside of the United States.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH dissents.