Joseph Darsky v. Commissioner.
Darsky v. Commissioner
Docket No. 6396.
United States Tax Court
1946 Tax Ct. Memo LEXIS 61; 5 T.C.M. (CCH) 861; T.C.M. (RIA) 46244; October 14, 1946
*61 Joyce Cox, Esq., and S. E. Wilcox, Jr., Esq., for the petitioner. D. Louis Bergeron, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency of $15,929.72 in the petitioner's income tax for 1941. The only matter in controversy is whether the petitioner was domiciled in Texas during 1941 and therefore entitled to report his income on the community property basis. Findings of Fact The petitioner filed his 1941 income tax return with the collector for the First District of Texas on March 16, 1942. The petitioner, a naturalized citizen of the United States and the son of N. H. Darsky, was born in Russia. He came to the United States when he was three years old and, with his family, settled in Youngstown, Ohio. He has one brother, Julius Darsky, and one sister, Mrs. Carl Lockshin. For more than 10 years prior to 1936, N. H. Darsky was the sole proprietor of a soft drink bottling and distributing enterprise with his principal place of business at Youngstown. From 1931 to 1936, the petitioner, his brother and their brother-in-law, Carl Lockshin, as employees continuously devoted their entire *62 time to the enterprise. In 1936, Julius Darsky was manager of the enterprise and assistant to his father. Lockshin was sales manager for the Youngstown area. Petitioner was manager of a branch of the enterprise in the Canton, Ohio, area and resided in Canton. Before the end of 1936, N. H. Darsky had purchased real estate in Akron, Ohio, for use as a branch of the enterprise to be established there. On December 30, 1936, N. H. Darsky, Julius Darsky, Lockshin and the petitioner formed a partnership known as Golden Age Ginger Ale Company with its principal place of business in Youngstown, to carry on the soft drink business theretofore carried on by N. H. Darsky as a sole proprietorship. In 1937, the partnership agreement was amended to permit N. H. Darsky to limit his partnership activities to those of a supervisory character. Until near the end of 1939, the partnership operations were confined to the State of Ohio, with Lockshin in charge at Youngstown, Julius Darsky at Akron, and the petitioner at Canton. At a bottlers' convention in San Francisco, California, in November 1939, the petitioner and Julius Darsky learned from officials of the Pepsi-Cola Company that it would shortly *63 place its Houston, Fort Worth and Dallas, Texas, franchises on sale. Having talked the matter over with the other partners, the petitioner and Julius Darsky visited the three cities, after which it was concluded that they desired the Houston franchise. Negotiations were then conducted in New York City and the Houston franchise was acquired by the partnership late in November 1939. The franchise was granted with the understanding that one of the partners would move to Houston and manage the plant. It was agreed by the partners that petitioner was the one who should go to Houston and manage the partnership operations there. On December 26, 1939, the petitioner, his wife and child arrived in Houston where for a few weeks they lived at a hotel and later in leased houses. The petitioner joined a fraternal organization in Houston in June 1941. Although retaining his church affiliation in Youngstown, the petitioner joined a church of the same faith in Houston. The petitioner organized the partnership's Houston branch and managed it until March 1, 1942. Operations for the 10 months ending October 31, 1940, the date on which the partnership's fiscal year ended, resulted in a net loss of *64 approximately $43,300. Operations for the year ended October 31, 1941 resulted in a profit of about $4,000. The J. F. Giering Bottling Company, a corporation in which the petitioner owned a small amount of stock, conducted operations in Youngstown. About September 1940, the wives of the four partners in Golden Age Ginger Ale Company acquired a majority of the stock of the J. F. Giering Bottling Company. About November 1944, the four wives formed a partnership, in which they had equal interests, to take over the business of the corporation. Early in 1942, Lockshin, who was manager of the Golden Age Ginger Ale Company's operations in Youngstown, suffered an illness and his wife was not able to manage the operations alone. After employing a manager for the Houston branch, the petitioner, accompanied by his child and his wife, left Houston on March 1, 1942 for Youngstown. Upon reaching Youngstown the petitioner took charge of the partnership operations there. In addition, the petitioner in 1942 acted as executive, at a salary of $8,000, of J. F. Giering Bottling Company. In 1942 and 1943 he also served as trustee of the Darsky Foundation, a family charitable trust operating in Youngstown, *65 and to which he made contributions of $5,000 and $10,000, respectively, in said years. During the winter months of 1943 the petitioner, in addition to his other activities, worked as a foreman for the Republic Steel Corporation in Youngstown after his draft board had advised him that he would either have to get a defense job or enter the army. After working a short time he quit the defense job and took an examination for the army but, so far as disclosed, never entered the service. In December 1944, the petitioner returned, with his family, to Houston where he resumed the management of the partnership branch and where he has since purchased a house. During the period between the petitioner's departure from Houston on March 1, 1942 and his return in December 1944, the Houston branch was managed by Abe Margolen until his entry in the army in March 1944, and theretafter by Pete Hindman who had been with the branch since 1941 or 1942 and who was familiar with the equipment During the period between petitioner's departure from and return to Houston, he spent a considerable portion of his time traveling in an effort to obtain supplies and materials for the partnership business and went *66 to Houston as often as possible. On an undisclosed number of occasions he spent as much as 30 days at a time there. On other occasions Julius Darsky went to Houston. During the years 1939 through 1943, the partnership employed several different Ohio accounting firms to audit its books, including those of the Houston branch, and to prepare the income tax returns of the partnership. They also prepared the returns of the partners, including those of the petitioner. For these years the petitioner's returns were prepared in Youngstown and were filed under the addresses and with the collector for the districts as follows: Year
Address Given
District
1939
705 St. Bernard St., Houston, Texas
18th Ohio
1940
705 St. Bernard St., Houston, Texas
1st Texas
1941
705 St. Bernard St., Houston, Texas
1st Texas
1942
2343 Selma Ave., Youngstown, Ohio
18th Ohio
1943
2343 Selma Ave., Youngstown, Ohio
18th Ohio
The 705 St. Bernard St. address was that of the partnership's plant in Houston. The 2343 Selma Ave. address was that of the petitioner's residence in Youngstown. During the years 1939 through 1942, the petitioner's wife had no separate income of her own. *67 Of the returns filed by petitioner for the years 1939 through 1943, the returns for all years except 1941 were filed on the basis of the petitioner's distributive share of the income of the partnership being his separate property. For 1941, the petitioner and his wife filed separate returns in which each reported as community income one-half of his distributive share of partnership income which was his sole source of income for that year. In an audit of the petitioner's return for 1940, the respondent determined a small deficiency on the basis of the return as filed. That deficiency, although covered by the deficiency notice involved in the present proceeding, was subsequently paid by petitioner and is not here controverted. In an audit of the petitioner's 1941 return the respondent determined that the entire amount of the petitioner's distributive share of partnership income was taxable to petitioner and determined a deficiency for that year which is controverted in the instant proceeding. Opinion The petitioner contends that during 1941 he was domiciled in Texas and that, therefore, his distributive share of the partnership income for that year was community income, one-half *68 of which was taxable to him and one-half to his wife. The respondent contends that the petitioner has failed to establish that he was domiciled in Texas during 1941 and that the determination of the deficiency accordingly should be sustained. When three years old the petitioner came to the United States with his parents and family who settled in Youngstown, Ohio. So far as disclosed, the parents at all times since have lived in Ohio. Likewise, so far as shown, the petitioner continued to live in Ohio at all times prior to December 1939. Therefore, on the showing here, Ohio appears to have been the State of petitioner's domicile late in December 1939 when he departed for Houston, Texas, and when it is contended that he changed his domicile to Texas. To effect a change of domicile there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place with the intention of making the last acquired residence a permanent home. Lee Rosenberg, 10 B.T.A. 601, aff'd., 37 Fed. (2d) 808. There is a presumption in favor of the original domicile and since *69 an abandonment or change of domicile is a matter of a very serious nature, to establish an intention to make such a change requires clear and convincing proof. In case of doubt the presumption is that the domicile has not been changed. Mere evidence alone of residence in the new place is neither conclusive nor sufficient evidence of a change of domicile. Samuel W. Weis, 30 B.T.A. 478. The petitioner testified that when he went to Houston in December 1939, it was with the intention of residing there permanently and that throughout the period from his departure on March 1, 1942 until his return in December 1944, it was his intention to return to Houston as quickly as he could possibly do so. The petitioner's witness, Allen M. Green, a Houston business acquaintance of long standing, testified that in conversations with petitioner as to his plans to remain in Houston "It was more or less generally agreed he had come here to stay and to be a Houstonian", and respecting the petitioner's return after his departure on March 1, 1942, "it was my understanding that this was only a temporary move pending his brother-in-law's return to good health". In further support of his contention *70 that he changed his domicile to Texas in 1939, the record shows approximately 26 months' residence in Houston, coupled with the fact that in June 1941 petitioner joined a fraternal organization there and at some undisclosed time prior to March 1, 1942, he affiliated with a Houston church, meanwhile retaining his membership in a church of the same faith in Youngstown. On the other hand, the petitioner lived in rented quarters all the time to March 1, 1942. He stayed in Houston scarcely longer than was necessary to get the branch organized and established on a profitable basis. In 1940, he and his wife acquired interests in another bottling enterprise in Youngstown for which he worked upon his return there. All the petitioner's income tax returns were prepared by Ohio accountants who were auditors for the partnership. The reason advanced for petitioner's departure from Houston on March 1, 1942, and his remaining in Youngstown for upwards of three years, was Lockshin's illness and the inability of his wife to carry on the partnership operations alone. Although the petitioner took charge of the partnership operations in Youngstown he engaged in other extensive activities there which *71 were not shown to be related to the affairs of the partnership. Furthermore, the record is silent as to the duration of Lockshin's illness or as to the time of his recovery. To the extent these factors have a bearing, they tend to negative an intention on the part of the petitioner to change his domicile to Texas. Other matters which would tend to throw light on the petitioner's intention as to domicile are where he paid his personal taxes, where he voted and where he registered for the draft. The record is entirely silent as to all these. It may well be that he did all these in Ohio. After a careful consideration of the evidence, we think that the petitioner has failed to establish that at any time prior to the end of the taxable year 1941 he had abandoned his Ohio domicile and acquired a domicile in Texas. Accordingly, the respondent's determination that the entire amount of the petitioner's distributive share of partnership profits for 1941 is taxable to petitioner is sustained. In reaching the foregoing conclusion we have not considered, nor do we make any decision with respect to, the question whether if the petitioner had been domiciled in Texas during 1941, such domicile *72 would have been sufficient to cause his distributive share of the partnership income to be community income taxable one-half to him and one-half to his wife. Decision will be entered for the respondent.